Barbara M. DOWELL, Paula J. Dowell, and Scott A. Dowell, Infants, by Jayne Taliarino, their general Guardian, Plaintiffs,

v.

Marion B. FOLSOM, Secretary Department of Health, Education and Welfare of the United States, Defendant.

Civ. No. 73.

United States District Court,
D. Montana,
Billings Division.

Dec. 9, 1957.

Stanton, Wilson & Hovland, Hardin, Mont., for plaintiffs.

Krest Cyr, U. S. Atty., Butte, Mont., for the District of Montana. Dale F. Galles, Asst. U. S. Atty., Billings, Mont., for defendant.

JAMESON, District Judge.

This action was commenced by Jayne Taliarino as general guardian of her three minor children, Barbara, Paula, and Scott Dowell, under Section 205(g) of the Social Security Act, as amended, Title 42 U.S.C.A. § 405(g), for review of a decision rendered on December 6, 1956 by the Appeals Council, Social Security Administration affirming a prior decision by a referee that plaintiffs were not entitled to child's insurance benefits by reason of the death of their father, Paul W. Dowell, on July 14, 1955, because the said children "were not receiving contributions toward their support from the insured at the time of his death."

The pertinent provisions of the Act under which plaintiff's claims were denied are:

"(d) (1) Every child * * * of an individual who died a fully. or currently insured individual after 1939, if such child * * *

"(C) * * * was dependent upon such individual at the time of such individual's death, shall be entitled to a child's insurance benefit * * *.

"(3) A child who has not attained the age of eighteen shall be deemed dependent upon his father * * *

at the time specified in paragraph (1) (C) of this subsection unless, at such time, such individual was not living with or contributing to the support of such child and—* * *

(C) Such child was living with and was receiving more than one-half of his support from his stepfather." 42 U.S.C.A. § 402, Sec. 202 of the Act.

The three plaintiffs, aged fourteen years, nine years and three years, respectively, are the children of Paul W. Dowell and Jayne Taliarino (formerly Dowell). Dowell and his wife were divorced on August 3, 1954. Under the decree of divorce the custody of the children was awarded the mother. The father was ordered to pay $150 per month for their support and granted their custody for two months,—from June 15th to August 15th each year. On August 21, 1954, the mother married John C. Taliarino. Dowell died on July 14, 1955, as the result of an automobile accident and at the time of his death was insured under the Social Security Act. Between August 21, 1954 and the date of Dowell's death the plaintiffs lived with their mother and stepfather.

On July 20, 1955, Jayne Taliarino filed an application on behalf of plaintiffs for child's insurance benefits. In the application it is recited that at the time of Dowell's death all of the children were living with her and her present husband. In statement regarding contributions it was recited that the father made a payment of $150 in September, 1954 and sent each of the children $10 for Christmas in 1954 and that "the balance of their support was furnished by my husband. Cost of their support is at least $50 per month each". In a supplemental statement Jayne Taliarino stated that Dowell was out of work or worked part time during the latter part of 1954, and that he wrote in November or December that he was expecting to go to work on a new job and would begin payments again; and that he had been working on the new job about two months at the time of his death.

The claim was disallowed and a hearing held before a referee of the Social Security Administration. At the hearing Mrs. Taliarino testified that the written statements she had made at the time of filing the application with respect to contributions were incorrect or incomplete and that at the time of her divorce she had received $300 to pay for a trip to California with the children, which began two days after the divorce was granted, and that while she was in California Dowell sent $50 in cash. She testified further that decedent had sent $20 in cash in January or February, 1955 and another $20 in cash in February and had also sent receipts showing payment of three bills incurred during their marriage,—one for $85 for tires for her automobile, one for $20 or $25 for a dress she bought for herself, and one for $20 as the final payment on a watch purchased for the eldest plaintiff. She testified that no payments were made subsequent to February, 1955.

On March 31, 1956, the referee found that on the basis of the evidence presented the claimants were not receiving contributions toward their support from the insured at the time of his death and were not accordingly entitled to benefits under the Act. An appeal was taken to the Appeals Council. A hearing was held on November 26, 1956, and plaintiffs were represented by their attorney who presented additional evidence and made oral argument. The additional evidence consisted of affidavits of the mother, her present husband and four friends, the latter stating that they had been informed by the decedent that he was sending money to help support the children and that he intended to have the children with him during the summer months. The mother's affidavit recited that in addition to the payments enumerated above (1) she had received in property settlement an automobile which she sold for $300 and a television set which she sold for $50 to $60 and that the proceeds had been used for the support of the children; (2) that during August, September and October, 1954, decedent

had furnished medicine for one of the children of the value of $50; (3) that a reasonable value of clothing and other personal possessions for the proper support of the children furnished by their father "and held by your affiant on behalf of said children on the 3rd day of August, 1954, the date of divorce, was $400.00"; and (4) that the total outlay for the support of the three children from July 14, 1954 to July 14, 1955 was $1041. The affidavit of her husband, John Taliarino, corroborated those portions of the affidavit of which he had knowledge.

On December 6, 1956, the office of Appeals Council rendered its decision in which it was recited that the "Appeals Council has given careful consideration to the additional affidavits and the contentions of claimant", and continues: "After thoroughly considering the entire record in this case, the referee's statement as to the evidentiary facts is herewith incorporated by reference, and the Appeals Council hereby adopts all of the inferences, findings and conclusions of the referee based upon the evidentiary facts, and his decision is hereby affirmed."

Under Sec. 205(g) of the Act, Title 42 U.S.C.A. § 405(g) "the findings of the administrator as to any facts if supported by substantial evidence shall be conclusive." The finding by the referee that "the claimants were not receiving contributions toward their support from the assured at the time of his death" was adopted by the Appeals Council and became a final decision under the Act.

"The reviewing authority of the District Court is not unlimited, for it may not substitute its inferences for those of the referee which are supported by substantial evidence." (Citing cases.) Ferenz v. Folsom, 3 Cir., 1956, 237 F.2d 46, 49, certiorari denied 352 U.S. 1006, 77 S.Ct. 569, 1 L.Ed.2d 551.

In United States v. LaLone, 1945, 152 F.2d 43, 44, the Court of Appeals of the Ninth Circuit, in holding that the District Court, 57 F.Supp. 947, had erred in reversing a decision of the Appeals Council of the Social Security Board, said in part: "Under this section of the Social Security Act providing for appeals from an administrative board, as under other similar acts, the board's findings of fact must be sustained if the court finds they are supported by substantial evidence. This same finality extends to the Board's inferences and conclusions from the evidence if a substantial basis is found for them. (Citing cases.) * * * The board's decisions interpreting the Act and regulations are entitled to weight; the board's findings of fact, if supported by substantial evidence, are conclusive. (Citing cases.)"

There is ample warrant in the record for the findings of the referee and Appeal Council. The referee had the advantage of seeing and hearing the mother testify and accordingly was in a better position than the court to evaluate her testimony. It was the function of the referee to determine the credibility of the witness. Larmay v. Hobby, D.C.E.D. Wis.1955, 132 F.Supp. 738.

It is clear from the Act and the decisions thereunder that "a minor child's entitlement to benefits" is dependent upon the existence of an "economic relationship which has been terminated by the death of the wage earner." Stephens v. Federal Security Administrator, D.C.E.D.Ill.1949, 121 F.Supp. 120, 123. The test of dependency required by the statute may be distinguished from a legal dependency pursuant to court order to provide support for a child, the former being a "practical test of dependency expressed by Congress," and the existence or non-existence of the latter being immaterial for purposes of determining the economic relationship required by the act. Stephens v. Federal Security Administrator, supra. The question here involved is whether the insured did in fact contribute the support required under the Act, —not whether he was legally obligated for support under the decree of divorce. This court is bound by the language of the act and, although the statute is remedial and should be given a liber-

al interpretation, this court would not be warranted in adopting a construction inconsistent with the plain meaning thereof. Mocogni v. Hobby, D.C.R.I. 1954, 126 F.Supp. 472; Ewing v. Risher, 10 Cir., 1949, 176 F.2d 641.

Counsel for plaintiffs argue that the dependency required "at the time of death" cannot mean at the exact instant of death, and therefore a year's time preceding the death should be used in considering the amounts contributed to the child's support. One case cited by plaintiffs apparently used this method (Kass v. Hobby, D.C.S.D.N.Y.1955, 130 F.Supp. 324); other cases cited by defendant show that such a procedure has not been adopted uniformly and in some instances has been expressly disapproved. Stephens v. Federal Security Administrator, supra; Mocogni v. Hobby, supra; Zugg v. Folsom, N.D.Ind.1956, 140 F. Supp. 806; Baetich v. Hobby, 2 Cir., 1954, 212 F.2d 480.

Clearly the act provides for a "time of death" test in determining whether the children were dependent upon the deceased father or were being chiefly supported by their stepfather. This does not require that contributions be made at the instant of death or the rejection of contributions which may have been made during any specific time in the past. The determining factor is whether the economic relationship of dependency existed between the father and children at the time of death or whether it had been superseded by an economic relationship of dependency upon the stepfather. Baetich v. Hobby, supra. In the instant case the facts and circumstances sustain the findings of the referee and Appeals Council against plaintiffs' contentions. Both the amount and frequency of payments by the father decreased and finally ceased altogether approximately five months before the father died. Substantial evidence supports the conclusion that the economic dependency of the children upon their father had been superseded by their dependency upon their stepfather prior to the father's death.

Nor would it appear that the plaintiffs' construction of the language used in the statute—that a child is *deemed* dependent unless certain conditions exist—could change the well established rule that the burden of proof rests upon one who files a claim with an administrative agency to establish that the required conditions of eligibility have been met. Norment v. Hobby, D.C.N.D. Ala.S.D.1953, 124 F.Supp. 489; Thurston v. Hobby, D.C.W.D.Mo.W.D.1955, 133 F.Supp. 205.

Counsel for plaintiffs contend that inasmuch as the mother and stepfather were living in community property states, (New Mexico and Texas) during the year preceding the death of the father, one-half of the support must be considered to have been received by the mother and that the claim does not accordingly come within the provisions of Section 402(d) (3) (C), Title 42 U.S. C.A.

This argument is untenable in the light of the practical test of support and dependency established by the act. The question of whether plaintiffs were receiving more than one-half of their support from their stepfather depends upon the contributions actually made by the stepfather and not upon title or ownership of the property or earnings from which the contributions were made. The effect of community property laws has been considered by the Secretary of Health, Education and Welfare in regulations issued pursuant to the act. Section 404.316, 20 C.F.R. 1956 Supp. provides in part:

"  *  *  * However, even though the natural or adopting father was not living with or contributing to the support of the child at such time, the child is still deemed to have been dependent upon such individual unless the child:  *  *  *

"(c) Was living with and receiving more than one-half of his support (see § 404.332) from his stepfather."

Section 404.332 of the Regulations provides in part:

"(c) What constitutes at least one-half or more than one-half support"

* * * A person is receiving more than one-half of his support from another if that other is making such contributions to such support to the extent of more than one-half thereof. 'Contributions', as used here, means contributions actually provided by the contributor from his own property or the use thereof, or by the use of his own credit. When a person receives and uses for his support income from his services or property, which income, under State law, is the community property of himself and his spouse, no part of such income is a contribution by the spouse may have therein. But congardless of any legal interest the spouse may have herein. But conversely, when a person receives and uses for his support income from the services or property of his spouse, which income under State law, is such community property, all of such income is a contribution by the spouse to such person's support."

In connection with provisions for "widower's insurance benefits" (Sec. 202 (f) of the act, 42 U.S.C.A. § 402(f), which were enacted by 1950 amendments, the Senate Committee on Finance said:

" * * * The determination whether the widower was receiving at least one-half of his support from his deceased wife has been made subject to regulations of the Administrator in order to permit the latitude necessary to enable him to determine the existence of true support, rather than support or lack of it resulting from income attributable to a spouse under community-property laws.

This is consistent with present administrative practice under [former] section 209(n) [or present section 216(h) (2)] of the Social Security Act as now in effect which requires a determination of whether a deceased husband was making regular contributions toward his widow's support at his death."

Senate Report #1669, p. 65, 81st Congress, 2nd Session, 2 U.S.Code Cong. Service 1950, p. 3355.

While not precisely in point on the section of the act under consideration, these regulations and the Senate Report indicate an administrative interpretation of the entire act contrary to plaintiffs' contention.

An administrative regulation promulgated within the authority granted by statute has the force of law and must be given full effect by the courts. United States v. Short, 9 Cir., 1956, 240 F.2d 292, 298 and cases there cited. The administrative interpretation of the act is controlling unless it is plainly erroneous or inconsistent with the regulations. Bowles v. Seminole Rock & Sand Co., 325 U.S. 410, 65 S.Ct. 1215, 89 L.Ed. 1700. United States v. Short, supra, and cases there cited. Moreover, the Social Security Act "must be given a nation-wide interpretation". Matcovich v. Anglim, 9 Cir., 1943, 134 F.2d 834, 836.

Counsel for both parties have submitted able and comprehensive briefs. After a careful review of all the evidence, including the affidavits submitted subsequent to the hearing before the referee, it is my opinion that there is substantial evidence to support the findings of the Administrator and Appeals Council. Even under a liberal interpretation of the act, this court cannot disregard the plain mandates of the act and regulations.

The decision of the Appeals Council is affirmed.