Mary SMALLWOOD, as next Friend of Lena M., Patricia A., and Joseph S. Moore, Plaintiff,

v.

Marion B. FOLSOM, Secretary of Health, Education, and Welfare, Defendant.

Civ. No. 6317.

United States District Court
D. Connecticut,
Civil Division.

April 10, 1958.

Walter G. Hensel, Westport, Conn., for plaintiff.

Simon S. Cohen, U. S. Atty., Hartford, Conn., W. Paul Flynn, Asst. U. S. Atty., New Haven, Conn., Dennis Cronin, Dept. of Justice, Washington, D. C., for defendant.

ANDERSON, Distict Judge.

This is an action brought under Section 205(g) of the Social Security Act, 42 U.S.C.A. Section 405(g), to review a final decision of the Secretary of Health, Education and Welfare. The plaintiff, the mother and next friend of Lena M., Patricia A. and Joseph S. Moore, on October 10, 1955 filed an application with the Bureau of Old-Age and Survivors Insurance of the Social Security Administration for "child's insurance benefits" on behalf of her three children whose father was Joe Moore, Jr., a deceased wage earner within the meaning of the Social Security Act. The children were stated to be under eighteen years of age and unmarried at the time of the wage earner's death. The plaintiff stated that the children were not living with the deceased wage earner when he died but were living with the plaintiff, her present husband, who was the children's stepfather, and their half-sister, who was the child of the plaintiff and their stepfather. The application was disallowed by the Bureau of Old-Age and Survivors Insurance, and the plaintiff was notified by letter dated November 3, 1955.[1] The plaintiff requested a reconsideration of her claim by the Bureau and was again advised that the children are not entitled to benefits.[2]

Subsequently, the plaintiff requested a hearing before a referee of the Social Security Administration. At the hearing held on April 19, 1956, the referee examined the plaintiff and introduced six documents in the record as exhibits. After the hearing, five exhibits were received as additional evidence before the record was closed on May 22, 1956. On May 23, 1956, the referee rendered his decision which held that the children were ineligible for "child's insurance benefits" as "the claimant children were not dependent on their natural father at the time of the latter's death within the meaning of the Act", as required by Section 202(d)(1) of the Social Security Act, 42 U.S.C.A. Section 402(d)(1). The referee's conclusion was based on his finding that the children's stepfather, the present husband of the plaintiff, was providing more than one-half of the children's support at the time of the deceased wage earner's death. Under Section 202 (d)(3) of the Act, 42 U.S.C.A. Section 402(d)(3), the children here cannot be considered dependent on their natural father, the wage earner, if their step-

1. In this letter, a form letter, the reason for disallowance was inadvertently misstated, as though the deceased wage earner were the children's stepfather.

2. The Bureau found that the major portion of the children's support was supplied by the stepfather. This conclusion was based on the Bureau's following statement: "Since none of the earnings were earmarked particularly for the support of Lena, Patricia and Joseph (the children) and since Mr. Smallwood (the stepfather) made approximately three times your salary while you (plaintiff) were working, it must be determined that he supplied the major portion of his stepchildren's support."

father with whom they were living contributed more than one-half of their support. The referee's decision became a final decision and reviewable in this court under Section 205(g) of the Act, 42 U.S. C.A. Section 405(g), when the Appeals Council of the Social Security Administration denied review. The present suit followed and is before the court on cross-motions for summary judgment.

Under the scope of review provided for in Section 205(g), the findings of the referee are conclusive on this court if supported by substantial evidence and the conclusions are binding if reasonably reached.[3] At issue then, under this standard of review, is whether or not the stepfather contributed over half of the children's support. On this, both parties are in accord.

The referee found that it was impossible to arrive at any exact percentage of support which was being furnished by the stepfather. He, therefore, based his conclusion that the stepfather provided over half the children's support on the fact that the amount of the stepfather's earnings which was available for household expenses was more than half of the amount used to pay normal family bills:

> "In the absence of evidence concerning specific amounts which must have been expended for clothing and other necessities, includible as items of support, it is impossible to arrive at any exact percentage of support which was being furnished by Mr. Smallwood, the children's stepfather. However, it would appear that the claimant's income alone was not sufficient to meet at least one-half of the household expenses. Although

it seems reasonable in determining the amount of support furnished by Mr. Smallwood to exclude from the amount available for support the payments made in connection with the automobile accident, it nevertheless appears that the balance of his earnings was available for support and was used to pay normal family bills. Also, it appears that such balance of earnings exceeded the earnings of the claimant." Page 7 of the Record.

The referee found that the plaintiff's earnings were $28 per week ($121 per month) and the stepfather's earnings were at least $63 per week ($273 per month). He also found that the stepfather made the following monthly payments: rent, including utilities—$58.-50; telephone—$5; installment for automobile purchase—$55.70; certain damages in connection with automobile accident—$25; other damages from the same accident—$25; installment on hospital bill for plaintiff—$20; payment on Household Finance Company loan—$21. These payments total $210.20.

The referee excluded the payments made in connection with the automobile accident, and found that the balance was available for household expenses. Although not specified, it is clear from the opinion that the referee assumed that the stepfather's total earnings, $273 per month, minus the payments in connection with the automobile accident, $50, were spent on household expenses.[4] If the record contained substantial evidence that the stepfather's earnings less the automobile damages were spent for household expenditures, there would, perhaps, be no need to disturb the judg-

---

3. See note 8, infra.

4. What is implicit in the referee's opinion in this regard is more specifically stated in the Bureau's ruling, see Note 2, supra. However, this Court assumes, on the representation of counsel for the defendant, that the referee gave no weight to the Bureau ruling and made an independent determination. But defendant still maintains that the relative *earnings* of the plaintiff and the stepfather, minus

the automobile accident expenses, are controlling as to what was contributed towards the family support: "In view of the admitted fact that plaintiff was only *earning* about $28 per week and that her husband *earned* about $70 per week, the referee was clearly correct in finding that plaintiff's husband (the children's stepfather) was *contributing* the greater amount of the two toward the family's support * * *."

ment of the referee. But there is not substantial evidence to support the statement that this balance of approximately $223 was spent for the household. In determining the amount of the stepfather's earnings which was available for household expenses, funds used for the stepfather's purely personal expenses or for his wife must be excluded. The referee recognized this principle in deducting the automobile accident expenses, but did not apply it to other personal expenses. By the same reasoning as the referee used in deducting the automobile accident expenses, the amount the stepfather paid for the plaintiff's hospital expenses must be excluded from the amount of support furnished by the stepfather for household expenses. See Kass v. Hobby, D.C., 130 F.Supp. 324. There was no specific and clear evidence offered to indicate for what purposes the money which the stepfather secured from the household finance company (and which required a $21 per month payment) and the $63 which was unaccounted for by specific allocation (the difference between the $273 monthly earning figure and the $210 which was specifically allocated) was used. Counsel for the defendant at the hearing on the motions suggested that this issue must be decided against the plaintiff, because she failed to meet her burden of proof. There is no doubt that the plaintiff has the burden of proof even though Section 202(d)(3)(c) of the Act is framed as an exception to the support which is deemed to exist in Section 202(d)(3), Dowell v. Folsom, D.C., 157 F.Supp. 46. But these sums, like the automobile damage sums and the plaintiff's hospital expenses, cannot be included as available for household support if they are purely personal expenses of the stepfather. And the stepfather, in a signed statement which the referee received as Exhibit 9, stated "I had to use my pay to take care of my own personal bills." The stepfather did not testify before the referee, but the defendant's claim supervisor commented on his credibility in Exhibit 10:

"We believe that Mr. Smallwood's statement can be relied upon. Although the records he brought to DO [District Office] were incomplete, he did have a receipted record of payments from Redden & Weiss and a number of receipts from United Illuminating Co. which confirmed that he had made those payments as alleged. The other information was given in a straightforward manner so as to create the impression that it could be relied upon. We did not include in Mr. Smallwood's statement the amounts he had to pay to his own attorney because he stated he could not recall amounts. However, he did say he had to pay considerable amounts for legal representation in actions arising out of the accident in which he knocked down a pole and ran into building. This was separate from Redden & Weiss." Pages 59 and 60 of the Record.

Since there was no evidence to dispute the stepfather's statement that these sums were for his "personal bills" and since there is no evidence to refute the claim supervisor's credibility evaluation, it would be unreasonable to conclude that this $84 per month was available for family expenses merely because the plaintiff has the burden of proof in this case.[5]

---

5. It should be noted that at the examination of the plaintiff, the referee attempted to arrive at precise figures in considering the support question but was unsuccessful in some respects. Plaintiff's failure to be precise in the financial calculations, however, did not mean she was in anyway recalcitrant. This was a witness who could not recall when she was married to her present husband. At the conclusion of the hearing, in response to an inquiry from the referee as to whether her complete story was in, she replied, "I hope it is. I done make such a mess of things I don't know." Further evidence that it was plaintiff's lack of knowledge and not her desire to block the truth which prevented the fuller disclosure the referee sought is the statement by the claim's supervisor:

With these sums excluded the amount of the stepfather's earnings available for household expenses is $119.20, which includes a payment of $55.70 per month on the automobile. It seems unreasonable to include the cost of the automobile as a family expense, but even if it is the total of $119.20 which was available from the stepfather's earnings is less than one-half the total available since the plaintiff had $121. available.

But if all of the automobile payments were properly a part of the household expenses, it might be advisable to remand this case for further findings of the referee in view of the facts that the contributions of the plaintiff and the stepfather were so nearly equal, and that the referee found that the stepfather's earnings were "at least" $63 per week and that the plaintiff might have had purely personal expenses also.[6] But on the basis of the evidence in the record, the automobile payments cannot be considered as an item of household expenses. The defendant's own claim supervisor stated that "the monthly amounts needed to maintain the household can be reconstructed fairly accurately." He excluded the automobile payments and found the household expenses in this case to be: "Telephone, $5; rent, $58.50; food, $100; total, $163.50." There was no other evidence on the auto-

mobile payments and their relation to household expenses which could reasonably justify their inclusion as a household item. Furthermore, since the referee found all of the food was paid for by the plaintiff, except for $5 furnished by the stepfather "once in a while", well over half of the amount used for family expenses was furnished by the plaintiff.

It follows, therefore, that the findings of the referee that (1) "the claimant's income alone was not sufficient to meet at least one-half of the household expenses" and (2) "that the balance [net earnings minus automobile accident expenses] of his [the stepfather's] earnings was available for support and was used to pay normal family bills" are not supported by substantial evidence. Pursuant to this court's authority in Section 205(g) of the Act to modify the referee's decision, with or without remand, it is hereby determined that evidence in the record shows that although the stepfather's earnings were more than half of total family earnings: (1) the plaintiff contributed more than one-half of the household expenses and (2) all of the balance of the stepfather's net earnings minus the automobile accident expenses was not available nor used for family support.[7] It follows, and the court so holds, that the referee's ultimate finding that the stepfather contributed more than one-half of

"She seemed to have considerably less knowledge of the shape the family finances were in than her husband."

6. Even if the automobile payments were household expenses, they would not be items of the children's support unless they were "ordinary and customary items of maintenance of the person supported". 20 C.F.R. Paragraph 404.332(b). A view of what constituted support of the children not based directly on total household expenses is presented at note 9 infra in this opinion.

7. In view of this modification and the referee's concession that he was "unable to arrive at any exact percentage of support which was being furnished by" the stepfather, the only other evidence which could be considered to lend any support to the conclusion of the referee that the stepfather supplied over half

the children's support was the statement on plaintiff's application which she signed: "Children are living with me and my husband who supports the children." The statement, although mentioned in the referee's opinion, is clearly not the basis of the referee's decision. The court feels that this statement, in view of the more specific evidence on the finances, does not constitute "substantial evidence" upon which the referee can base a finding that the stepfather furnished over half the children's support. It is noted that the statement—and this is intended to imply no conscious wrongdoing on the part of defendant's representatives—was not in plaintiff's handwriting although she did sign it and the plaintiff, the transcript shows, is a very inarticulate spokesman for her cause to say the least.

the children's support is not based "upon conclusions reasonably reached upon due consideration of all relevant issues presented". Walker v. Altmeyer, 2 Cir., 137 F.2d 531, 533.[8]

Furthermore, the court concludes that the stepfather did not supply more than one-half of the children's support. This conclusion is reached not only on the basis of the modified finding that the stepfather did not contribute over half of the total family expenses, but also by a more direct view of what constituted the children's support. The Social Security regulations, 20 C.F.R. Paragraph 404.332(b), provide: "What constitutes support. 'Support' includes food, shelter, clothing, ordinary medical expenses, and other ordinary and customary items of maintenance of the person supported." The referee found that the food for the family was purchased out of the plaintiff's income and that the shelter was provided by the stepfather. Plaintiff testified and the referee made no contrary finding that she paid for the children's clothing, although this amount was unspecified, and that the children had no medical expenses. The aliquot share of food expense attributable to the three teenage children would be approximately $50; the aliquot share of the shelter expense (including telephone and utilities) would be at the most $31.75. Even if no money was spent on the children for clothing, the stepfather would have to contribute $18.25 each month for "other ordinary and customary items of maintenance" of the children, before he would contribute over half of the children's support.[9] That he made no such contribution is clear from his uncontradicted statement that he used his money for personal expenses and the claim supervisor's statement that "The rest of the income [in excess of the $163 for household expenses] went to support a huge burden of debt, mostly related to the operation and misoperation of automobile."

Since the court concludes, by these two separate but related methods, that the stepfather did not supply more than one-half the children's support, it must hold that the children were dependent on the deceased wage earner, within the meaning of the Act, and are eligible for the requested benefits. Although the conclusion on the support issue is contrary to the one reached by the referee, there is no need or justification to remand to the referee for further proceedings as the court's conclusion is reached on the basis of the pleadings and record presented in this court and the Act provides that this court may reverse the referee's decision, "with or without remand".

Therefore, the plaintiff's motion for summary judgment is granted and the defendant's motion for summary judgment is denied. Accordingly, the entry of judgment is directed forthwith.

8. This court's review is a limited one. The facts underlying the decision which were rejected here do not bind this court because they were not based on substantial evidence. The referee's judgment cannot stand because it was not based on conclusions reasonably reached. This type of review is in accord with the standard in the Walker case.

9. These figures are based on a family unit of six people. There was evidence and the referee noted that plaintiff's brother lived with the family and contributed $10 per week, or $43 per month, to the family unit for board and room. If the $43 board and room figure were allocated in the same ratio as the food and shelter figures for the family of six, the aliquot shares for the children, considering them as 3/7ths of the family unit, would be approximately: food, $54.12; shelter, $34.37. This analysis would be less beneficial to the defendant for the stepfather would have to contribute approximately $19.76 for "other ordinary and customary items of maintenance" before he could contribute over half of the children's support.