Henry A. MARTIN, Plaintiff,

v.

Abraham A. RIBICOFF, Secretary of Health, Education and Welfare, Defendant.

No. 797.

United States District Court
D. Montana,
Butte Division.

July 24, 1961.

As Amended Sept. 7, 1961.

McCaffery, Roe, Kiely & Joyce and John L. Peterson, Butte, Mont., for plaintiff.

Krest Cyr, U. S. Atty., Butte, Mont., for defendant.

MURRAY, Chief Judge.

Plaintiff brings this action under the provisions of 42 U.S.C.A. § 405(g) to review a final decision of the Secretary of Health, Education and Welfare denying plaintiff disability insurance benefits under the Social Security Act, 42 U.S.C.A. § 423(a), and denying plaintiff the establishment of a period of disability under 42 U.S.C.A. § 416(i).

Plaintiff filed his application for disability insurance benefits and his application to establish a period of disability on June 16, 1958, alleging that he first became unable to engage in substantial work in October, 1954, at age 46, because of tuberculosis. When his applications were denied, plaintiff requested and was granted a hearing before a hearing examiner and the hearing examiner rendered a decision adverse to plaintiff, dated April 7, 1960. Plaintiff made a request for a review of the hearing examiner's decision by the Appeals Council of the Social Security Administration, which request was denied under date of September 20, 1960, and, therefore, the decision of the hearing examiner represents the final decision of the Secretary, and this action is brought to review that decision.

In order to be eligible for a period of disability under 42 U.S.C.A. § 416(i), and for disability insurance benefits under 42 U.S.C.A. § 423, the plaintiff must establish that he is unable to engage in any substantial gainful activity by reason of a medically determinable physical or mental impairment which can be expected to result in death or to be of long continued and indefinite duration, and that such disability had its onset prior to the filing of the applications for a period of disability and disability insurance benefits, and at a time when plaintiff met the "quarters of coverage" requirements of the Act set forth in 42 U.S.C.A. § 416(i) (3) and 423(c) (1).

Under both the statute and the cases, the burden rested on the plaintiff to prove that he met the conditions of eligibility fixed by the Act before he would be entitled to the benefits for which he applied. 42 U.S.C.A. § 416(i) (1); 42 U.S.C.A. § 423(c) (2); Dowell v. Folsom, D.C., 157 F.Supp. 46; Corn v. Flemming, D.C., 184 F.Supp. 490. Furthermore, in this proceeding before the court, the decision of the Secretary, if supported by substantial evidence, is conclusive and must be affirmed. 42 U.S.C.A. § 405(g). "Substantial evidence" is more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Consolidated Edison Co. of New York v. National Labor Relations Board, 305 U.S. 197, 229, 59 S.Ct. 206, 217, 83 L.Ed. 126; Aaron v. Flemming, D.C., 168 F.Supp. 291, 294.

It is conceded that plaintiff meets the "quarters of coverage" requirements of the Act, so the only question before the hearing examiner was whether or not the plaintiff, at or prior to the time he filed his applications, was unable to engage in any substantial gainful activity by reason of a medically determinable physical or mental impairment which can be expected to result in death or to be of long continued and indefinite duration. The examiner decided this question adversely to plaintiff. However, the Court is of the opinion, after examining the record, that there is no substantial evidence, as that term is defined above, to support the examiner's decision, and that such decision was arrived at on the basis of conjecture, suspicion and speculation.

The medical evidence in the record shows without dispute that at least since January 24, 1957, the plaintiff has been

suffering from pulmonary emphysema and far advanced pulmonary tuberculosis, inactive. These conditions were diagnosed both by x-ray and by vital capacity tests. There is some evidence that the condition of pulmonary tuberculosis existed since prior to May of 1942, when plaintiff was inducted into the Army, for the Veterans Administration advised plaintiff in a letter in May, 1957, "Your condition of pulmonary tuberculosis shown on your induction chest x-ray film pre-existed service and the evidence of record does not establish service aggravation for this condition". At any rate, regardless of the duration of the disease, by January 24, 1957, when plaintiff was admitted to Montana State Tuberculosis Sanitarium, it had reached the stage where it was diagnosed as pulmonary emphysema and far advanced pulmonary tuberculosis. At that time plaintiff's vital lung capacity was less than 50% of normal, and he suffered dyspnea on slight exertion. At the time he was discharged from the hospital the tuberculosis had become inactive as a result of treatment and plaintiff was advised to avoid exertion and exposure, have routine checkups with family physician and to have routine rest periods. Thereafter, from time to time, plaintiff was hospitalized and was examined and tested, and the diagnosis was the same except that his vital lung capacity reached a high of 66 plus percent and his maximal breathing capacity on one test was found to be 58.16 percent of normal. On several occasions Dr. John C. Murphy of the Montana State Tuberculosis Sanitarium expressed the opinion that plaintiff was totally and permanently disabled and that his condition was progressive.

On May 24, 1957, plaintiff, in response to his application for veterans disability benefits, was found by the Veterans Administration to be totally disabled, but was denied the benefits because the Veterans Administration expected that he would recover and be able to return to work. However, later and on June 10, 1959, plaintiff was awarded a Veterans disability pension of $66.15, commencing April 10, 1959, on the ground that the "evidence of record reveals that your disability prevents you from following substantial gainful employment". There is no evidence that plaintiff's condition at that time was any different than it was in May, 1957, when he had been denied a pension, except that the expectation that he would recover and be able to return to work apparently was gone. The reason the pension was made effective April 10, 1959, was because that was the date plaintiff's second application was received by the Veterans Administration. Under § 521, Title 38 U.S.C.A., a pension in the amount of $66.15 is provided for qualified veterans who are permanently and totally disabled from non-service-connected disability.

■ While the finding of total permanent non-service-connected disability by the Veterans Administration is, of course, not binding or controlling on the Secretary under the Social Security Act, it should have some probative value in view of the similarity in the definitions of "disability" in the Veterans Act and in the Social Security Act. In the Social Security Act disability is defined as "inability to engage in any substantial gainful activity by reason of a medically determinable physical or mental impairment which can be expected to result in death or to be of long continued and indefinite duration". 42 U.S.C.A. §§ 416 (i) (1) and 423(c) (2). In the Veterans Act disability is defined as "any disability which is sufficient to render it impossible for the average person to follow a substantially gainful occupation, but only if it is reasonably certain that such disability will continue throughout the life of the disabled person". 38 U.S. C.A. § 502. See Kerner v. Flemming, 2 Cir., 283 F.2d 916, 920.

■ The only medical opinion, based on examination and testing of plaintiff, that is expressed in the record is that of Dr. John C. Murphy of the Montana State Tuberculosis Sanitarium to the effect that plaintiff was unable to work and was totally and permanently disabled. The Veterans Administration

found plaintiff totally disabled in May, 1957, but expected that he would recover sufficiently to return to work. That expectation, however, was not realized. Thus Dr. Murphy's opinion that plaintiff was totally and permanently disabled remains uncontradicted. The opinion of an expert witness is advisory and not binding on the trier of the fact, in this case the hearing examiner, but as was stated in Hill v. Fleming, D.C., 169 F. Supp. 240, 245,

> "Expert opinions on such issues are admissible evidence to be considered by the fact-finder, but when they are not repudiated in any respect by substantial evidence to the contrary, an adverse decision on these ultimate facts should be set aside as based on 'suspicion' and 'speculation'. (Citing cases.)"

To the same effect, see Teeter v. Flemming, 7 Cir., 270 F.2d 871, 874, and Kohrs v. Flemming, 8 Cir., 272 F.2d 731, 736.

■ The hearing examiner did not question the diagnoses of the doctors that plaintiff was suffering from pulmonary emphysema and inactive advanced pulmonary tuberculosis with a substantial reduction in vital lung capacity and breathing ability, but found that these conditions did not render the plaintiff unable to engage in any substantial gainful activity. This finding of the hearing examiner on the record that was before him and on the law, could only be based on speculation and conjecture. Not only must the substantial gainful activity be within the plaintiff's physical capacity, but it must also be commensurate with the plaintiff's age, educational attainments, training and experience. Jacobson v. Folsom, D.C., 158 F.Supp. 281; Kohrs v. Flemming, supra; Teeter v. Flemming, 7 Cir., 270 F.2d 871; Flemming v. Booker, 5 Cir., 283 F.2d 321; Kerner v. Flemming, 2 Cir., 283 F.2d 916; Graham v. Ribicoff, 9 Cir., 1961, 295 F.2d 391. As stated in Kerner v. Flemming, supra, 283 F.2d at page 921 "mere theoretical ability to

engage in substantial gainful activity is not enough if no reasonable opportunity for this is available".

■ The record shows that plaintiff was 50 years old at the time he filed his application. He had a three year high school education, following which in 1925 or 1926 he was employed as a clerk and truck driver in a grocery store for five or six years. After that he was employed as a meat cutter until about 1938. From 1938 until 1942, when he entered the Army during World War II, he was employed in the mines as a common laborer. After his discharge from the Army in 1945, he returned to the trade of a meat cutter for several years and then returned to work in the mines from 1948 until 1954, when he states he was unable to work because of his lung condition. In 1950, while working in the mines, plaintiff broke his right wrist. In 1955 he returned to work in the mines and on the first and only shift he worked he reinjured his right wrist and has been unable to work since that time.

Because of his lung condition, the plaintiff is unable to walk for more than a half hour at a time on level ground and cannot climb stairs, or otherwise exert himself. He requires frequent rest periods and is unable to withstand exposure to cold. He lives in a one-room apartment and his activities consist of reading and visiting at the Anaconda Company's Employees' Club, which is within a block of his apartment, and visiting friends. He goes to church once a week, except in the winter time when the cold weather forces him to remain indoors. Because of the injuries to his right wrist, he has lost the strength of that member and even if he were otherwise able, he could not return to meat cutting because of the loss of strength in the right wrist. The hearing examiner concedes that the plaintiff could not return to his employment as a meat cutter or a miner or in an occupation which would require a great deal of physical exertion. At the hearing the examiner suggested that perhaps plaintiff could do the job of a watchman if

such job could be obtained, and the claimant agreed he would attempt to do such job if it were available. However, it appears extremely unlikely that plaintiff could follow this pursuit in view of his inability to walk for more than a half hour at a time without resting and his inability to withstand exposure to cold. Furthermore, the examiner's speculation that plaintiff could pursue the activity of a watchman seems to ignore the common practice of companies employing sedentary watchmen to fill such positions from within the ranks of their own company. See Kerner v. Flemming, 2 Cir., 283 F.2d 916, 921, Footnote 7. The evidence shows that the only company from whom plaintiff might expect to secure such a position by virtue of having worked for the company until he became disabled, the Anaconda Company, has refused to consider plaintiff for any employment by virtue of his physical condition.

As stated previously, the mere theoretical ability to engage in substantial gainful activity is not enough if no reasonable opportunity for this is shown to be available. In Graham v. Ribicoff, supra, there was in evidence industrial and governmental studies bearing upon the employment opportunities of persons suffering physical impairments of various kinds and those studies indicated many types of jobs which the claimant in that case, with his physical impairments, was capable of filling, and for that reason the Court of Appeals for the Ninth Circuit affirmed the denial of benefits to Graham. In this case the record is devoid of evidence showing the availability of any type of employment which the plaintiff, with his physical disability and his education, training and experience, would be capable of handling. While the burden of proving his disability rested upon the plaintiff, that burden does not extend so far as to require plaintiff "by the use of a catalogue of the nation's industrial occupations to go down the list and verbally negative his capacity for each of them or their availability to him as an actual opportunity for employ-ment". Butler v. Flemming, 5 Cir., 288 F.2d 591, 595.

The record shows that on at least two occasions the plaintiff applied to the State of Montana for silicosis benefits, and these benefits were denied him, and the examiner's decision indicates that some significance may perhaps have been attributed to this denial in reaching the conclusion that plaintiff was not disabled. These silicosis benefits in Montana are in the nature of compensation for occupational disease and are payable for silicosis, not tuberculosis no matter how disabling. While there is a great deal of similarity in the effects upon the body of silicosis and pulmonary tuberculosis, the two are distinct diseases, and a denial of silicosis benefits to plaintiff does not indicate a finding that he is not totally disabled by virtue of pulmonary tuberculosis.

As stated before, plaintiff claims his disability commenced in October, 1954. However, his testimony shows that he returned to work in 1955, and worked one shift during which he reinjured his right wrist. There is no showing that but for the injury to the wrist he would not have been able to continue working at that time. His inability to work as a result of the broken wrist would not meet the statutory requirement of an impairment "which can be expected to result in death or to be of long continued and indefinite duration". The first date upon which the record with any certainty shows plaintiff was found to be suffering from a disability by reason of a medically determinable cause of the duration required by the statute was on January 24, 1957, when he was admitted to the Montana State Tuberculosis Sanatarium, at which date he still met the earnings requirements of the Act. The record further shows that since that date he has been continuously disabled within the meaning of the Act and is entitled to the benefits applied for.

Therefore, it is ordered and this does order that defendant's motion for summary judgment be and the same hereby is denied.

It is further ordered that the final decision of the Secretary is reversed, and the case be remanded to the Secretary with directions that plaintiff be granted a period of disability and disability insurance benefits from July 1, 1957.