Hulda V. HARRIS, Plaintiff,

v.

Abraham RIBICOFF, Secretary of Health, Education and Welfare of the United States, Defendant.

Civ. No. 1975.

United States District Court
W. D. North Carolina,
Asheville Division.

Nov. 9, 1961.

862

Richard B. Ford, Asheville, N. C., for plaintiff.

Hugh E. Monteith, U. S. Atty., Asheville, N. C., for defendant.

WARLICK, Chief Judge.

Hulda V. Harris, plaintiff, on February 27, 1961, filed her petition in which she seeks to have reviewed the final decision of the Secretary of Health, Education and Welfare,—made under the provisions of the Social Security Act, 42 U.S.C.A. § 405(g), which decision as made had denied her claim for disability insurance benefits under 42 U.S.C.A. § 423(a) and additionally denied her the establishment of a period of disability under 42 U.S.C.A. § 416(i).

Plaintiff filed her petition for disability insurance benefits on January 19, 1959, and her application to establish a period of disability on February 2, 1959,—setting out therein that she first became unable to do any work of a substantial nature, on the 17th day of July, 1958, when she was fifty one years old,—for that among other things she had suffered a stroke, was badly afflicted with bronchial asthma, and suffered from the ravages of tuberculosis. That she was unable to stoop, was weak, often fainted, and that she didn't sleep well at night and smothered quite a lot.

Her application was initially denied and on reconsideration was again denied by the Bureau of Old-Age and Survivors Insurance.

Whereupon plaintiff requested a hearing and the Hearing Commissioner, before whom plaintiff and her witnesses appeared, passed on the matter and found among other things, that plaintiff was not under such a disability as would entitle her to the relief sought. A review of this ruling by the Appeals Council of the Social Security Administration was requested by plaintiff, which Board received additional evidence, but declined to review the Hearing Examiner's decision. Such ruling under the law thereby became the final decision of the Secretary of Health, Education and Welfare.

Whereupon plaintiff filed her petition for a review in this court.

The review requested was heard in Asheville at which time the plaintiff was present with her counsel. This hearing was heard on the motions filed by both plaintiff and defendant for Summary Judgment under Rule 56, Fed.Rules Civ. Proc. 28 U.S.C.A.

The test as to disability is found in the definition set out in 42 U.S.C.A. § 416(i) which reads as follows:

"* * * the term 'disability' means (A) inability to engage in any *substantial gainful activity* by reason of any *medically determinable* physical or mental impairment which can be expected to result in death or to be of long-continued and indefinite duration". (Italics added.)

The scope of the appeal is well settled in such cases. By section 405(g) it is provided that "The findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive, * * * *". It is not disputed that the determination on this appeal is to be based on the record transmitted here by the Secretary, considered as a whole. Goldman v. Folson, 3 Cir., 1957, 246 F.2d 776, and Hill v. Fleming, D.C., 169 F. Supp. 240; Lease v. Fleming, D.C., 178 F.Supp. 169.

Under these statutory definitions a disability therefore must not only be medically determinable but it must be of such severity that it renders the claimant unable to pursue any substantial gainful occupation, which condition can reasonably be expected to be of long-continued and indefinite duration.

Therefore, obviously, under both the statute and the decisions, the burden rests on the plaintiff to prove that she met the conditions of eligibility fixed by the Act before she would be entitled to the benefits for which she applied. 42 U.S.C.A. § 416(i); 42 U.S.C.A. § 423(c); Dowell v. Folson, D.C., 157 F.Supp. 46; Corn v. Flemming, D.C., 184 F.Supp. 490.

Furthermore, in this proceeding before the court, the decision of the Secretary, if supported by substantial evidence, is conclusive and must be affirmed. 42 U.S.C.A. § 405(g). "Substantial evidence" is more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Consolidated Edison Co. of N. Y. v. National Labor Relations Board, 305 U.S. 197, 229, 59 S.Ct. 206, 217, 83 L.Ed. 126; Aaron v. Flemming, D.C., 168 F.Supp. 291; Martin v. Ribicoff, D.C., 196 F.Supp. 547.

Over the years quite a number of cases of this character have come before me for decision. In every instance as I now recall, after having carefully reviewed the record, I have seen fit to affirm the decision of the Appeals Council. However, after having had the opportunity of seeing the plaintiff, and of observing her physical condition, and knowing the effects of her illness,—and after considering the whole of the record, I find myself wholly in disagreement with the conclusions arrived at by the Secretary; and will undertake as best I can, from all the evidences at hand, to set forth the grounds for the opinion which I have.

The plaintiff, though only fifty four years of age, leaves one who has seen her, under the impression that she is at least seventy. She is frail, appears to be terribly emaciated, with sunken eyes, drawn face and a stooped body, all of which surely indicates that she, through her long years of hard work, lack of a proper nutrition, and possibly need and want, has just about reached the end of her road. I somehow got the impression that there was before me an individual of honest intent and character, but one who had suffered a great deal from the hard knocks of life over her years spent under very trying circumstances. To say the least she appears to be one who has been tied onto the treadmill of economic bondage.

She was born January 31, 1907, went to work when she was thirteen years of age, in a textile plant in Rutherford County. All of her working days thereafter were spent in various cotton mills. She continued such work year after year until

she had the attack and was compelled to stop all work on July 17, 1958. She knows no work other than that of a wage earner in a textile mill. Not many of the advantages which have come to the laboring man in more recent years were enjoyed by her. She finished the fifth grade in elementary school, and married in 1922. Her husband died in 1941, and about a year thereafter she remarried and is now living with her present husband in Rutherford County. He is disabled and practically helpless. They now live on $58 which is received as a gift each month from the Welfare Board of Rutherford County. She owns a three room house where they live, but pays $21 a month on its purchase price. She had five children by her first marriage,—four of whom are yet living. All are grown and have homes of their own. Evidently they make no contribution to their mother for her subsistence.

Taking up the medical evidences in order, it appears that as early as June 1952 plaintiff, while working in a textile plant, became ill and on the advice of the mill physician, was admitted to the Rutherford Hospital, suffering with an excruciating pain in the right shoulder; that the attending physician diagnosed her ailment after fully studying her condition, as being partially that of a severe neuralgia, from some unknown source, with a strong possibility of active tuberculosis. On being discharged she returned and later took up her work in a textile plant.

The next report has to do with an examination made of plaintiff on August 21, 1957, by Dr. Hyde of Rutherford Hospital with a final diagnosis on his part of influenza, possibly of the Asiatic variety, and bronchitis.

On August 2, 1958, following her attack while working in the Alexander Mill on July 17, 1958, and because of a stroke and bronchial asthma, she was again admitted as a patient in the Rutherford Hospital. This time Dr. Hyde's diagnosis concluded that she was a well developed, and undernourished female appearing chronically ill, suffering from sibilant rales (a whistling sound) and moist rales (a sound produced by liquid in the bronchial tubes) were heard.

Chest X-rays were taken resulting in the suspicion of active tuberculosis, and it was recommended that treatment be had by her in a tubercular sanitarium.

The final diagnosis by Dr. Hyde was infectious asthma, chronic pulmonary disease,—tuberculosis activity to be determined. Plaintiff was thereupon transferred to the Black Mountain Sanitarium a tubercular institution maintained by the State of North Carolina and there as was suggested by Dr. Hyde, she was examined; chest X-rays were made and compared with similar examinations made at varying times from 1952 to 1958. These examinations indicated that any chest disease was at that time inactive.

On August 13, 1958, plaintiff was again admitted to the Rutherford Hospital where Dr. Mebane, an attending physician of said hospital, noted in his examination that it revealed wheezing sounds of the chest and that certain portions of the skin had deep red crusts, which he diagnosed as dermatitis in the admitting diagnosis, along with active tuberculosis and bronchial asthma. She seemed to have improved upon therapy and was discharged one week later with a final diagnosis of bronchial asthma.

The record further discloses that Dr. Radford an associate in the hospital, saw the plaintiff occasionally from July 18, 1958 to February 1, 1959, when she complained of a shortness of breath, wheezing, general physical weakness and an occasional attack of asthma. His examination revealed a blood pressure of 130/80, a decided shortness of breath on any mild exertion, some emphysema (distention of lung tissue by trapped air), but no other discrepancies were noted. His diagnosis was asthma, stroke, with weakness of left eye lid, weak left arm, and occasional difficulty in swallowing. On the basis of his complete examination and his findings, Dr. Radford stated that he regarded the plaintiff as "unable to work".

On May 14, 1959, plaintiff on complaining of asthma was admitted to Rutherford Hospital and was again attended by Dr. Mebane. His examination revealed breathing with moderate effort, accompanied by inspiratory as well as expiratory wheezing; lungs hyperresonant to percussion, and an elevated temperature. Her response to treatment was accomplished within one week. His final diagnosis was "bronchial asthma and healed tuberculosis."

On June 29, 1959, plaintiff was seen by Dr. Norman L. Anderson of Asheville, a specialist in internal medicine, at the request of the North Carolina Department of Public Welfare. Plaintiff related to him a history of having had bronchial asthma for twelve years, blackouts, bouts of recurring pneumonia, and a stroke in August of 1958. At the time of her examination she weighed 105 pounds. Her lungs showed a number of harsh rales (no asthmatic wheezing was heard) and the electrocardiogram was normal. In summarizing his study Dr. Anderson gave the following opinion.

"This lady has (1) *Bronchial asthma* by history. (2) Old *pleurisy* left and bilateral *pulmonary fibrosis* with moderate reduction in pulmonary function. (3) Mild *hypertensive cardiovascular disease* with history of old *Bulbar stroke* giving left sided facial paralysis involving also the tongue and the left eye, now nearly disappeared. (4) *Cervical polyp.*

He only made this recitation of what he found and offered no opinion as to his thoughts on her disability.

Dr. Radford again saw patient on August 14, 1959, and after a thorough examination concluded in his findings that plaintiff was "not able to do remunerative work". His diagnosis being that she had asthma and CVA (cerebrovascular accident) with residual weakness.

On August 19, plaintiff was a patient at the Rutherford Hospital and was again seen and thoroughly examined by Dr. Hyde. After having fully gone into the various things which evidently afflicted plaintiff, and making a recitation thereof, in his report, Dr. Hyde states, in his conclusion, the following:

"This patient does have chronic bronchial asthma, healed tuberculosis, past history of hypertensive cardiovascular disease, emphysema and has had one transient episode of cerebral angiospasm as of 9–1–58. It is my opinion that she should be regarded as disabled to work."

It is to be noted that 9–1–58 to which Dr. Hyde refers is the claimed date of plaintiff's paralytic stroke.

The North Carolina Department of Welfare on November 17, 1959, received from Dr. M. J. Hornowski of Asheville, to whom the plaintiff had been referred by it, his report in which after going fully into her condition, and his findings as is shown in the two page single space report found in the record, makes the following recommendations:

"Mrs. Harris suffers from only moderate disability from the psychiatric standpoint, in my opinion. There is a definite hypochrondriasis which aggravates any and all of the organic problems that she suffers from to a sufficient extent, however, that I doubt that she would ever become employable again in the future."

The evidence further discloses that the plaintiff was on September 13, 1960, again admitted to the North Carolina Sanitarium at Black Mountain, where after many tests had been run and a very thorough examination had of her condition, she was discharged on September 20, with this diagnosis: "Bronchial asthma, with pulmonary fibrosis (scar tissue in lung) probably resulting from a previous pulmonary infection."

Dr. Robson, who had plaintiff under his care during her seven day stay in the sanitarium further sets out in his report "That she appeared chronically ill; that sibilant ronchi were audible all over both lung fields."

All of the conclusions made throughout the various findings of the physicians and

staff associates who have gone over plaintiff's physical condition and diagnosed her ailments, seemingly agree upon her disabilities. The findings and conclusions are plainly visible to one who has the opportunity of observing her and studying her condition, and one can only conclude that we are dealing with a sick woman, whose stamina to resist is gone and who under no circumstances could engage in any substantial, gainful activity.

The only question before the court is whether or not the plaintiff, at or prior to the time she filed her applications, was unable to engage in any substantial, gainful activity by reason of any medically determinable physical or mental impairment, which can be expected to result in death or to be of a long-continued and indefinite duration.

This is pretty much a question of fact to be determined on the whole record transmitted by the Secretary.

The difficulty in making a decision in cases like this naturally does not arise from any uncertainty as to the law, but only as to its application. In regard to the health and the physical and mental ability of any party, each case of necessity depends upon all the facts found and the special circumstances that exist.

One must give consideration to that kind of gainful occupation to which the plaintiff was best fitted, either by physical ability, by education, or by her experiences in life. The education which she acquired through attending school through five grades must have been very slight, and going to work as she did when thirteen years of age in a textile plant was such that she could have learned but very little other than that which she acquired from those with whom she associated, and who likely possessed no higher educational qualifications than she. So one must conclude, that she could know little other than that known by the average laborer in a cotton mill. One would therefore wonder, being incapacitated to longer follow that character of work, just what type of work she could turn to, even assuming that she was physically able, and from which she could earn a livelihood. This record gives me no impression other than that she was physically and mentally incapable of performing any substantial gainful activity.

Surely substantial, gainful activity must be within the plaintiff's physical capacity, and it must also be commensurate with plaintiff's age, educational attainments, training and experience. Jacobson v. Folson, D.C., 158 F.Supp. 281. Martin v. Ribicoff, D.C., 196 F.Supp. 547.

Consequently I conclude that the decision of the Secretary in this case is not supported by substantial evidence. And for that reason the motion of the plaintiff for Summary Judgment under Rule 56 is granted, and a similar motion made by the defendant is denied.

Counsel will submit decree.