**James P. AARON, Plaintiff,**

v.

**Arthur S. FLEMING, Secretary of Health, Education and Welfare for the United States of America, Defendant.**

**Civ. A. No. 453–E.**

United States District Court
M. D. Alabama, E. D.

Dec. 18, 1958.

the defendant which held that plaintiff is not entitled to the benefits of the disability freeze provision of the Social Security Act. That provision, 42 U.S.C.A. § 416(i)(1), defines "disability" as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or to be of long-continued and indefinite duration," and Section 416(i)(2) states that a "period of disability" must be "a continuous period of not less than six full calendar months * * * during which an individual was under a disability * * *." This period of low or zero income will be eliminated from the wage earner's records, increasing his "average monthly wage" and consequently the amount of future old age benefits.

The defendant's referee found that the plaintiff had not been so disabled since September 1, 1953, as claimed, and this decision was affirmed by defendant's Office of Appeals Council. This Court must determine whether or not there is substantial evidence to support the defendant's findings that the plaintiff has failed to establish that his condition precludes him from engaging in any substantial gainful activity.

The plaintiff is sixty-three years of age and has been gainfully employed most of his adult life as a traveling salesman. Allegedly, since September 1, 1953, until the date of his claim, January 5, 1956, "he has been unable to work in any field and has been forced to refuse several attractive job offers because of his health." In the Application to Establish a Period of Disability, the plaintiff answered certain questions.

"8. Describe your daily activities (this includes such activities as walking, driving, hobbies, working for someone else or yourself, working around the house, etc.).

"I walk, a little and drive my car some but I do very little. I have found out by experience that if I make any effort my heart gets to running very fast."

Godbold, Hobbs & Copeland, Montgomery, Ala., for plaintiff.

Hartwell Davis, U. S. Atty., and Paul L. Millirons, Asst. U. S. Atty., Montgomery, Ala., for defendant.

RIVES, Circuit Judge.

This action is brought pursuant to 42 U.S.C.A. § 405(g) to review a decision by

"10. How does your injury or illness prevent you from working?

"I am just not able. I get out of wind. If I drive my car my prostrate (sic) trouble begins to cause me pain."

"10. (a) What is the nature of your injury or illness?

"Heart Trouble—Spastic Colon, Prostate—Arthritis—Foot Trouble —Back Trouble.

"(b) How does it prevent you from working at the present time?

"I am not able to do any type work. I get very nervous (sic) in crowds, I have weak, fainting spells and cannot get any type of work.

"(c) How did it first cause you to stop working?

"Doctors told me that if I wanted to live longer I would have to stop work, that instead of working I belonged in a hospital."

The evidence presented to the referee consisted of the following: diagnosis by several physicians, accurately summarized in the plaintiff's brief; [1] testimony from the claimant, from Mr. W. Newell Reaves who had been his employer, and from Mr. Lester Stewart, a close personal friend, all favorable toward a finding of total disability; numerous certificates and other documentary evidence, all of which supported the allegation of disability; and proof that the plaintiff was entitled to disability payments from

---

[1] "(1) R. 49—*Report of Dr. Joseph Banks, Dadeville, Alabama, dated January 26, 1956:* This physician found Plaintiff to be suffering from chronic infected prostatitis, arterioschlerotic heart disease, and hypertrophic arthritic lumbar spine. His expert conclusion was that 'This man is unemployed and unemployable.'

"(2) R. 57—*Report of Dr. C. R. Walton, a Veterans Administration psychiatrist.* His examination revealed that Plaintiff suffered from 'anxiety reaction.' It did not deal with any of Plaintiff's physical ailments.

"(3) R. 58—*Report of electrocardiogram administered by a Dr. Walters,* who is apparently a Veterans Administration physician. He set out the results of each phase of the electrocardiogram but states *no conclusion* to which these results would lead in determining whether or not Plaintiff is totally disabled.

"(4) R. 59—*Report of Dr. James E. Walker of Opelika, Alabama, dated January 31, 1956.* He found chronic prostatic infection and hypertrophic arthritis (no mention of any heart condition). He stated no opinion as to the degree of Plaintiff's disability.

"(5) R. 60—*Report of Dr. Lachlan L. Campbell, Seale Harris Clinic, Birmingham, Alabama.* This physician examined Plaintiff only for a complaint arising out of Plaintiff's prostate condition. The remainder of his report deals with what he found in the records of the Seale Harris Clinic. The records show that Plaintiff's cardiac functional capacity was class 3 *(marked limitation).* His only statement dealing with the degree of Plaintiff's disability is 'the *records do not* show that he was ever *judged* to be totally incapacitated.' (Emphasis supplied.)

"(6) R. 69 and R. 70—*Reports of Dr. James F. Crenshaw of the Seale Harris Clinic, Birmingham, Alabama.* These reports follow up that of Dr. Campbell. The disagnosis reported by Dr. Crenshaw was coronary heart disease, duodenal ulcer, and hypertrophy of the prostate. He states that 'He (Plaintiff) should undertake no type of strenuous exercise or engage in activities which would produce mental fatigue.' He further states that Plaintiff has electrocardiographic evidence of micardial damage and that Plaintiff is considered permanently disabled.

"(7) R. 71—*Report of Dr. R. B. Garlington, Camp Hill, Alabama, dated December 1, 1957.* This physician states that he has been Plaintiff's family physicial (sic) for ten years. His diagnosis conforms substantially to those of other physicians who have examined Plaintiff. His conclusion is, 'I am of the opinion that this man has not been able to do gainful work for the past five years.'

"(8) R. 72—*A second report of Dr. Joseph Banks, of Dadeville, Alabama* (See (1) above) In this report Dr. Banks says 'His (Plaintiff's) disability of arteriosclerotic heart disease renders him unemployable at more than a marginal level and has for five years or more.' "

Prudential Insurance Company from October 1, 1954.

The referee takes the alleged illnesses —"heart trouble—spastic colon—prostate—arthritis—foot trouble—back trouble"—and attempts to show that they do not render the plaintiff disabled, concluding:

"\* \* \* An examination by the Veterans Administration in 1954 failed to disclose *any* heart abnormality \* \* \*. The Referee is unable to conclude, therefore, on the basis of the evidence of record, that the claimant was ever unable to work because of a severe heart ailment. \* \* \* the history of a spastic colon, which apparently required no serious medical procedures and which was amenable to control by dietary discretion, cannot \* \* \* here serve as the basis for a finding of disability. \* \* \*

\* \* \* \* \* \*

"\* \* \* On the basis of the evidence of record, the Referee cannot avoid the conclusion that the irritability and nervousness of the claimant, during the last year of his employment and thereafter, was a temporary condition stemming from his refusal to accept sound medical advice for an operation of the prostate, and the Referee must so find. \* \* \*

\* \* \* \* \* \*

"As to the claimant's 'arthritis,' 'foot trouble,' and 'back trouble,' it is only too apparent from the medical record, the claimant's activities, and the Referee's personal observations \* \* \* that he is apparently capable of the light work and sedentary activity which would be suitable to the average person of his age, education, and vocational background."

The referee summarized:

"For the reasons stated above, the Referee is constrained to find that the claimant was not, during the period from September 1, 1953, through January 5, 1956, or any portion thereof, unable to engage in substantial gainful activity by reason of a medically determinable physical or mental impairment which could be expected to result in death or to be of long-continued or indefinite duration."

After carefully reading and studying the record, I must disagree. I think there is no substantial evidence to support such a holding. There is no substantial evidence, medical or otherwise, which does not tend to corroborate plaintiff's claim. It appears that the referee based his decision largely upon a disability determination by the Department of Health, Education, and Welfare made pursuant to plaintiff's claim, wherein the report states:

"Medical information provided by the VAH revealing EKG within normal limits, forward and backward motion of spine 75% of normal and no muscular spasticity, is evidence to judge the applicant is able to engage in some type of gainful occupation."

This report was made on May 23, 1956, and it had as its basis a medical examination from the Veterans' Administration Hospital. The doctor making the disability determination did not have any part in the VAH report which adjudged the claimant physically entitled to non-service pension benefits. This cannot constitute the substantial evidence required to support the referee's findings in view of the fact that all the other evidence is to the contrary.[2]

The referee, no doubt, in defining "disability," placed upon the phrase "any substantial gainful activity"

2. "Substantial evidence" has been best defined by Chief Justice Hughes as follows: "Substantial evidence is more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Consolidated Edison Co. of New York v. National Labor Relations Board, 305 U.S. 197, 229, 59 S.Ct. 206, 217, 83 L.Ed. 126.

an objective test, although he uses language to the contrary.[3] But surely the test must be subjective—surely our ever-enlarging bureaucracy has not yet reached the stage of "expertise" that it can depersonalize a person's illnesses. Subjectiveness *must* be the test, and, as stated in Jacobson v. Folsom, D.C.S.D. N.Y.1957, 158 F.Supp. 281, 286:

> "Implicit in this criterion (of ability to engage in substantial gainful activity) is that the gainful work be commensurate with plaintiff's educational attainments, his training and experience. * * * For a man engaged in active and high pressure selling all of his adult life a transition at this late stage in life to a 'white collar' job under close supervision might be unrealistic and irreconcilable with his training and experience. Furthermore, his ability to obtain such employment, in view of his selling background, might be doubtful."

It is further apparent that the referee gave too strict an application to "disability." Even though the Act is worded in strong language and the Congressional history indicates a strict policy of application,[4] to conclude in this case that the plaintiff is not "disabled" within the meaning of the Act would make "disability" commensurate with "helplessness", "bed-ridden," or "at death's door." No matter how infirm, or disabled, or sick a man is, if he still possesses some of his faculties and some degree of mobility, he is not in the strictest sense unable to perfrom "*any* substantial gainful activity." I do not interpret the Act to apply only to the totally helpless and bed-ridden nor to those at death's door. If a wage earner has the inability to engage in "any substantial gainful work" which is commensurate with his education, training, experience, and physical and mental capacities, then he should be given the benefit of the "disability freeze." In my opinion, findings of the defendant are not supported by substantial evidence.

3. The referee stated:
   "It thus seems clear that the Congress has adopted as the standard of 'disability' the requirement that the person be unable to engage in any substantial gainful activity, including not only his previous occupation but any other occupation in which he might be employable considering the circumstances of his education, age, work experience, and physical and mental capacities; and that, *in determining whether the impairment claimed is of the required degree of severity, consideration must be given to reasonable medical or surgical treatment available to the claimant which would cause recovery or substantial reduction of the symptoms of his condition, and to the claimant's ability to make reasonable adjustments to new occupations.* Moreover, the causal connection between any existing unemployment and the impairment must be clearly established."

4. The Senate (Committee on Finance) Report No. 1987, pp. 20–21, and the House (Committee on Ways and Means) Report No. 1698, p. 23, 83d Congress, 2d Session, state in part as follows:
   "Only those individuals who are totally disabled by illness, injury, or other physical or mental impairment which can be expected to be of long-continued and indefinite duration may qualify for the freeze. The impairment must be medically determinable and preclude the individual from performing any substantial gainful work. * * *
   "There are two aspects of disability evaluation: (1) There must be a medically determinable impairment of serious proportions which is expected to be of long-continued and indefinite duration or to result in death, and (2) there must be a present inability to engage in substantial gainful work by reason of such impairment (recognizing, of course, that efforts toward rehabilitation will not be considered to interrupt a period of disability until the restoration of the individual to gainful activity is an accomplished fact). The physical or mental impairment must be of a nature and degree of severity sufficient to justify its consideration as the cause of failure to obtain any substantial gainful work. Standards for evaluating the severity of disabling conditions will be worked out in consultation with the State agencies. They will reflect the requirement that the individual be disabled not only for his usual work but also for any type of substantial gainful activity * * *.'"

It is therefore ordered and adjudged that the decision of the defendant be and it is reversed and that the cause be remanded with directions to find the plaintiff disabled within the meaning of 42 U.S.C.A. § 416(i) and to enter a decision accordingly.