**Thomas O. HAYES, Appellant,**

v.

**Anthony J. CELEBREZZE, Secretary of Health, Education, and Welfare, Appellee.**

**No. 19630.**

United States Court of Appeals
Fifth Circuit.

Jan. 3, 1963.

**650**

James L. Shores, Jr., Birmingham, Ala., Clarence F. Rhea, Gadsden, Ala., for appellant.

Macon L. Weaver, U. S. Atty., Birmingham, Ala., Stanley M. Kolber, Atty., Dept. of Justice, William H. Orrick, Jr., Asst. Atty. Gen., Alan S. Rosenthal, Atty., Dept. of Justice, Washington, D. C., for appellee.

Before RIVES, CAMERON and BROWN, Circuit Judges.

JOHN R. BROWN, Circuit Judge.

The question raised on this appeal is whether there is substantial evidence to support a determination by the Hearing Examiner of the Department of Health, Education and Welfare that Claimant Hayes was not entitled to Social Security disability benefits. Our answer is in the negative and therefore we reverse the decision of the District Court upholding the Secretary's determination.

A brief statement of Claimant's background is helpful. He was born in 1898. He attained a fifth grade education and is able to read and write "a little—not too well"; he can get the general understanding from newspapers. Claimant was in World War I and is presently receiving a non-service connected disability pension from the Veterans Administration.

Claimant has spent his entire life doing manual labor. He was raised on the farm, worked in a foundry, on "public works," in a sawmill and then returned to the foundry. He worked as a molder, pouring iron and lifting heavy molds. Claimant remained there until 1952 when he was forced to go to the hospital. Upon his release and on advice of his doctor he obtained a lighter job in the foundry which he kept until April 1957. At that time, so he states, he was advised by his personal doctor either to quit work or quit living.

In November of 1957, Claimant filed application for disability freeze and disability benefits, 42 U.S.C.A. §§ 416, 423. He asserted that his condition satisfied the statutory test of an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or to be of long-continued and indefinite duration." 42 U.S.C.A. § 423(c) (2). His application was administratively denied and Claimant requested a hearing. After a consultative examination arranged by the State Agency, the Alabama Division of Vocational Rehabilitation found that Claimant was not totally disabled. It is ironic, Claimant contends, that although this was their finding, they refused to accept him for vocational rehabilitation because his physical "(a) impairment [was] too severe," and there were "(b) no employment opportunities" for one in his condition. A formal hearing was then held. After hearing the testimony of Claimant and considering the medical evidence, all of which was in the form of written reports, the Hearing Examiner found that Claimant was not totally dis-

abled. This decision became final upon a denial of review by the Appeals Council.

Claimant then sought relief from the District Court, 42 U.S.C.A. § 205(g). That Court affirmed the agency findings with the determination that these findings were supported by substantial evidence.[1] Claimant then brought this appeal.

■ At this point, we see no need for a lengthy discussion of the standards applicable when courts deal with administrative determinations. The statute provides that "[t]he findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive, * * *." 42 U.S.C.A. § 405(g). The question of what amounts to substantial evidence is a matter of law for the reviewing court to determine upon a considered evaluation of the whole record. Efforts to verbalize the process are seldom helpful since the standard is question-begging, with all quite clear once the conclusion is reached. Cf. Texas Eastern Transmission Corp. v. F. P. C., 5 Cir., 1962, 306 F.2d 345, 347; Hattaway v. United States, 5 Cir., 1962, 304 F. 2d 5, 9. Occasionally the problem is directly likened to the acceptance or rejection of jury verdicts. At other times it is in terms that substantial evidence "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." N. L. R. B. v. Columbian Enameling & Stamping Co., 1939, 306 U.S. 292, 300, 59 S.Ct. 501, 505, 83 L.Ed. 660. Of course one thing of critical importance is the nature of the proceeding. That makes it essential to bear in mind what Judge Friendly emphasized in Kerner v. Flemming, 2 Cir., 1960, 283 F.2d 916, 921–922, that these so-called records lack much of the formal comprehensive attributes of a typical administrative record.

The record contains reports of four physicians who examined Claimant in connection with his claim. Two of these were personal physicians who had known Claimant for some years. The other two examined Claimant as consultants at the request of the State Agency. No two of the four doctors were in agreement as to the exact nature of Claimant's impairment. However, one fact is paramount—each doctor found that Claimant had a substantial impairment.

A brief consideration of these reports reflects the impression we gain that in his treatment of ostensibly conflicting medical reports, the Examiner made some crucial findings which are really not supported at all in the record, and furthermore did not really resolve these conflicts.

We begin with the report of Dr. Watts who treated Claimant intermittently from 1952 until the time of his examination in November 1957. At that time Dr. Watts found him to be suffering from a slowly progressive condition of severe hypertrophic arthritis and bronchiectasis. Dr. Watts found this arthritic condition to extend throughout the entire spine, shoulders and knees, causing marked limitation of motion in the spine. Dr. Watts was emphatic that he had advised Claimant not to work.

■ As we shall later see, the Examiner's decision does not really treat with this as a medical proposition. This is emphasized by the substantially parallel finding of "osteoarthritis of the entire spine" in the consultative report of Dr. Holland which the Examiner in no way discredits. As to this we have the strong impression that the Examiner was laboring under the approach which the Secretary's brief in this Court importunes us to take. The Secretary persists in the notion that no matter how painful in fact this must be, it does not satisfy the statute since this is one of life's burdens. Supporting this the brief lays stress on the words from Adams v. Flemming, 2 Cir., 1960, 276 F.2d 901, 904, that "Judicial notice can be taken of the fact that

---

1. The District Judge also couched his ruling in terms that Claimant had failed to carry the burden of proving his disability. We feel it unnecessary to discuss this separately. See Kerner v. Flemming, 2 Cir., 1960, 283 F.2d 916.

* * *. There are undoubtedly millions of people suffering daily from some infirmity: * * * those whose arthritic and rheumatic symptoms flare up and subside; * * * and those who suffer from various spinal ailments and discomforts." Responding to a like argument, this Court in Butler v. Flemming, 5 Cir., 1961, 288 F.2d 591, 595, in the plainest of terms rejected as out of keeping with legislation whose " * * * purpose * * * is to ameliorate some of these rigors that life imposes," the ideas once expressed by Judge Hand in Theberge v. United States, 2 Cir., 1937, 87 F.2d 697, 698.

After the first adverse determination by the State Agency, Claimant requested reconsideration and in support of it submitted the report of Dr. Leyden of April 7, 1959. This report reflects that Dr. Leyden had first examined Claimant in 1957, had been treating him for heart disease which he currently found to be progressive. The diagnosis was that Claimant was suffering from hypertensive heart disease with marked angina cyanosis. He, as did other doctors, found a "huge enlarged heart." The condition was diagnosed by him as progressive and "very little, if any," improvement can be expected. The doctor stated Claimant "is unable to walk up steps, unable to hoe, or sweep" and that "he has angina on slight exertion." His positive conclusion was that Claimant was "totally disabled to work, unable to climb steps, run or face wind and walk."

During this reconsideration the State Agency referred Claimant to Dr. Holland for a consultative examination and report. While his report revealed that " * * * there is no limitation in motion or movement of the spine," he went on to acknowledge that Claimant " * * * states that * * * pain is elicited in the lower back and upper thorasic and cervical region on extreme motions." Indicating strongly that the doctor credits the general truthfulness and reliability of Claimant, the report then states that he " * * * is extremely cooperative in these tests and makes an effort to go

through the motions, even though it apparently does give pain." In addition, the report found that "electrocardiogram [is] consistent with old posterior myocardial infarction." The report concluded with this opinion which, for reasons later discussed, we think highly significant:

"OPINION: I feel that this man has: 1. osteoarthritis of the entire spine. 2. arteriosclerotic heart disease, functional Class II, but I doubt if the chest pain described above is due to angina pectoris. In regard to the points of requested emphasis not covered above: a. Response to therapy—He apparently has not been too greatly benefited as far as the back pain or chest pain is concerned. b. Estimate work tolerance —This is difficult to evaluate since his complaints are not well substantiated objectively, but if they be true, it would be difficult for him to pursue any type of manual labor."

The State Agency again redetermined that Claimant was not disabled. In connection with the requested Examiner's hearing, the Agency arranged for him to be examined by another consultant, Dr. Hawley, on November 10, 1959. This report describes his usual complaints of pain on exercise, but physical examination was essentially negative. The diagnosis was, however, "1. Hypertensive cardiovascular disease. 2. Obesity."

In addition to these medical reports, the Hearing Examiner had before him the record of the Veterans Administration used in connection with its allowance of Claimant's non-service connected disability. That record likewise reflected a diagnosis of "1. Hypertensive vascular disease." The X rays of the dorsal and lumbar spine revealed "minimal to moderate degenerative arthritis * *" with manifestations "predominantly localized at the lumbo-dorsal junction area and the lower lumbar area" together with "fairly large anterior and anterolateral boney spurs * * * fused in areas. * * *."

We recognize, of course, that it is not our function or that of the District Court to resolve factual conflicts including contrary opinions expressed by doctors. But a consideration of the Examiner's report leaves us with the definite impression that he did not really perform the function of drawing the critical inferences of facts and law. On the contrary, the structure of his report and the wording used leaves us with a strong feeling that he was primarily reviewing the prior adverse determinations of the State Agency. Important as is the routine administrative determination concerning the merits of claims, the scheme of the statute and the implementing regulations call for an initial determination of all of the relevant questions by the Hearing Examiner entirely independent of the conclusions previously reached administratively. Of course this material is customarily before the Examiner, and in the usual situation may undoubtedly be significant as he draws his own conclusions. But in this function he is in no sense reviewing the prior decision of the administrative agencies or the sufficiency of the record to support their findings.

But even if we are in error in this impression, we think that the Examiner's report and decision reveals deficiencies of a kind requiring further hearing and decision. The Examiner's report was a chronological discussion of the determinations and redeterminations by the State Agency and a paraphrase of the medical reports which we have discussed. In the Examiner's conclusions he first found that the " * * * summary as recited by the State Agency in its decision of December 2, 1959 * * * constitut[ed] a fair and objective" statement. The Examiner, thereupon adopting this formally as his own, reached "the conclusion * * * that the Record does not establish that Claimant was" disabled within the meaning of the statute. In the course of adopting the findings of the State Agency, the Examiner expressly approved this very significant conclusion: "Thus, it would appear that this wage earner [Claimant] is able to sit, stand, walk and otherwise move about in the performance of moderately strenuous activity without developing significant symptoms."

We may assume that in the ordinary situation the trier of fact could draw such conclusions from conflicting medical reports. But since the medical evidence consisted solely of medical reports unaided by explanatory oral testimony, there is nothing in this medical record which, in the present posture, adequately supports these critical findings. Drs. Watts and Leyden are clear against it, and Dr. Hawley's consultative report is neutral at most. It is essentially a report of objective findings but in none of them does Dr. Hawley undertake to draw a conclusion one way or the other on the medical fitness of Claimant to engage in gainful employment of a kind open to him considering his age, education, training and experience. Indeed, his formal diagnosis "hypertensive cardiovascular disease" seems quite consistent with that of Drs. Watts and Leyden. He does not make any finding either as to the severity of this medical condition or its operative effect on employability. That leaves largely Dr. Holland. His opinion found definite osteoarthritis of the spine as well as a functional heart disease. Even more significant, Dr. Holland concluded that if the Claimant's complaints of pain and inability to exert himself are true, "it would be difficult for him to pursue any type of manual labor."

In the eyes of Dr. Holland, the critical thing then was the resolution of the question of whether the complaints of pain and inability to exert himself were genuine and well founded. The doctor did not undertake to pass on this question, and had he done so it would have been of tentative value only. For this was a run-of-the-mill issue for resolution by the Hearing Examiner. But the Hearing Examiner did not undertake, either inferentially or expressly, to resolve this crucial subsidiary fact upon which nearly all of the medical contro-

versy would depend. It may be that the Examiner labored under the misapprehension asserted here by the Secretary's brief that subjective pain is insignificant. If so, perhaps he felt that since Dr. Holland stated that these "complaints are not well substantiated *objectively*" there was no need for him to determine this point. But the statute does not require that disability or its cause be "substantiated objectively." Of course it must be "by reason of any medically determinable physical or mental impairment." But modern medicine is neither so scientific nor so helpless today that it either does, or must, evaluate only objective factors.

The result is that by the peculiar circumstances of this record, the Hearing Examiner either did not fulfill his role, made fact findings which are not adequately supported, or failed to resolve crucial issues.

When the fact findings carry with them such operational finality as they do under this statutory plan, we must be certain that in arriving both at the ultimate decision and the essential subsidiary facts, the Examiner has evaluated all of the evidence under proper standards. Where these turn on credibility choices concerning things as elusive as the truthfulness of subjective symptoms and complaints, the Examiner's report should afford some *indication of the* choices made and the basis for them.

We do not have that assurance from this record. Consequently, while we do not regard this, as we have some records, as requiring a reversal and rendition in favor of the Claimant, we do think that the case should be remanded for further administrative hearings and decision.

 The legal standards are now well outlined. For this sort of situation, they have been epitomized by the dual question (1) what can appellant do? and (2) what employment opportunities are available to a man who can only do what the Claimant can do.[2] And in finding the answer "mere theoretical ability to engage in substantial gainful activity is not enough if no reasonable opportunity for this is available."[3] Stringent as is the statutory standard of disability, it is to be administered with reason. Were it otherwise few would ever be able to qualify. This was pointed out by Judge Rives in a decision which we have many times approved. "No matter how infirm, or disabled, or sick a man is, if he still possesses some of his faculties in some degree of mobility, he is not in the strictest sense unable to perform '*any* substantial gainful activity[4].'" For like reason once the Claimant makes a substantial showing, the burden resting generally on the Claimant to make out a claim is not to be carried to the logical extreme of forcing him to negative his capacity to do every possible job in the catalogue of the nation's industrial occupations.[5]

 We do not undertake to blueprint these proceedings on remand. But we think it appropriate to state that all of the present record may be used and the parties are free to, and undoubtedly will, supplement it by additional evidence, oral or written, or both.[6] Like-

---

2. Hicks v. Flemming, 5 Cir., 1962, 302 F.2d 470; Kerner v. Flemming, 2 Cir., 1960, 283 F.2d 916.

3. Butler v. Flemming, 5 Cir., 1961, 288 F.2d 591, 594; Kerner v. Flemming, 2 Cir., 1960, 283 F.2d 916, 921.

4. Aaron v. Fleming, M.D.Ala., 1958, 168 F.Supp. 291 at 295; Hicks v. Flemming, 5 Cir., 1962, 302 F.2d 470; Butler v. Flemming, 5 Cir., 1961, 288 F.2d 591; Flemming v. Booker, 5 Cir., 1960, 283 F. 2d 321.

5. See Butler v. Flemming, 5 Cir., 1961, 288 F.2d 591 at 595.

6. Each statutory program has its own unique standards. Consequently, the action of the Veterans Administration is not decisive. But in view of the similarity of the statutory tests, the Examiner should at least evaluate it to determine its significance. See Martin v. Ribicoff, D.C.Mont., 1961, 196 F.Supp. 547. Even more direct and requiring some evaluation is the Department's own refusal to

wise, rather than attempting to cast it in terms of whether the prior decision should or should not be sustained, an entirely new decision should be reached on that total record. We intimate nothing as to the result to be reached.

Reversed and remanded.

accept the Claimant for vocational rehabilitation because his impairment was too severe and no employment opportunities were available.