Al Wallace **CLIFTON**

v.

Anthony V. **CELEBREZZE,** Secretary of Health, Education and Welfare.

Civ. No. 3956.

United States District Court

N. D. Texas,
Fort Worth Division.

March 30, 1964.

---

T. Gary Cole, Jr., Fort Worth, Tex., for the Government.

Brown, Herman, Scott & Young, Fort Worth, Tex., for plaintiff.

BREWSTER, District Judge.

The plaintiff brought this action under 42 U.S.C.A. § 405(g) seeking to review and set aside the decision of the Secretary of Health, Education and Welfare denying plaintiff's application to freeze his social security and disability status under the provisions of 42 U.S.C.A. § 416(i).

This suit is now pending on its second go-round. It was originally instituted to review a previous adverse decision of the Secretary on the same application. Shortly after it was originally filed in this Court, Judge Davidson entered an order remanding it to the Secretary with directions "to reopen the hearing, to cause additional evidence to be taken, and to review his decision, all with respect to plaintiff's *physical and mental condition and impairment.*" (Emphasis added). The hearing so held, with additional evidence received and considered in connection with that adduced in the first proceeding, resulted in a decision denying plaintiff's application for a disability freeze. The matter is now before this Court for consideration of plaintiff's claim that the decision of the Secretary, through the Appeals Council to which the case was delegated, is erroneous for lack of substantial evidence to support it.

The plaintiff claims that he became permanently disabled to engage in substantial, gainful activity on June 3, 1950, when at least half of his left lung was removed. The last quarter during which he met the statutory earnings requirements ended on September 30, 1952; and his special insured status therefore expired on that date. He filed his claim for disability freeze on February 9, 1956.

The question presented to the Secretary was whether the plaintiff was suffering a disability from physical or mental impairment, or both, of such severity as to preclude him from engaging in substantial, gainful activity; whether such disability had its inception during the period between June 3, 1950 and September 30, 1952, and continued without interruption until February 9, 1956, and would probably continue in the then foreseeable future.

The Appeals Court of the Department concluded that the plaintiff was not entitled to have a period of disability established because he had "not sustained his burden of proof that his physical and mental impairments were of such severity as to prevent him from engaging in

all types of substantial gainful activity on or before September 30, 1952, when he was fifty years of age and last had the requisite insured status for the establishment of a period of disability."

The Court is of the opinion that the decision of the Appeals Council should be reversed and set aside because it is in direct conflict with the rule announced in Butler v. Flemming, 5 Cir., 1961, 288 F.2d 591; Ferran v. Flemming, 5 Cir., 1961, 293 F.2d 568; Hicks v. Flemming, 5 Cir., 1961, 302 F.2d 470; Hayes v. Celebrezze, 5 Cir., 1963, 311 F.2d 648; Page v. Celebrezze, 5 Cir., 1963, 311 F.2d 757. While the first decision of the Appeals Council was handed down in July, 1957, before any of the decisions above cited, its second decision was rendered only a few days after the opinion in the landmark Butler case. The Appeals Council gave little heed to the opinion of Judge Rives written for a three-judge court in Aaron v. Fleming, D.C.Ala., 1958, 168 F.Supp. 291, 295, which announced the now generally accepted rule that the disability freeze provisions of the Social Security Act are not limited "only to the totally helpless and bed-ridden" and to "those at death's door."

A close analysis of the record in this case reveals that this is not a case of evidence pro and con on the disability issue. It is rather one where the Appeals Council has said that it refused to accept as competent some of the evidence offered, and, that when it had done so, the remaining evidence was inadequate to establish disability.

The only oral testimony offered was that of the claimant, his wife and his brother. No fair construction of their testimony, intact or dissected, would support any conclusion except that the plaintiff was suffering from a disability entitling him to the relief sought. All the other evidence was documentary, and consisted of the written statements of seven doctors who had examined or treated the plaintiff, of hospital and court records, written statements from lay persons familiar with plaintiff's condition, letters and administrative reports.

The evidence is reviewed in detail in the decision of the Appeals Council, and it will therefore be treated only in summary fashion in this opinion.

The Appeals Council accepted the following facts as being satisfactorily proved:

1. The plaintiff was born on a farm on the outskirts of Tallicy, Alabama, on January 25, 1902, and continued to live on the family farm until he had finished three years of high school. Thereafter, he attended night school for about two years.

2. The plaintiff has had no specialized education or training, and is qualified to do only the unskilled type of work that requires physical effort to some kind. As one of a family of ten children, he helped with the milking and farm work when he was growing up. After he left the family farm and went to Texas, he worked for short terms at riveting in oil field, electrical repair work, automobile speedometer repair, roofing, employee of aircraft plant during World War II, delivery man for a camera store, light fixture salesman, nightwatchman, and real estate agent.

3. The plaintiff has been the victim of several serious bodily injuries and illnesses including:

a. Flash burns to his face and eyes in the middle 20's sustained while he was taking down an electrical control box during the period he was working as an electrical repairman for a street car company left him with a permanent defect in vision.

b. He was seriously injured in 1930 in a fall while working for a roofing company. He and a co-employee fell from a roof over forty feet to the ground, and the co-employee landed on top of plaintiff. He received a fractured skull, a fractured nose, a concussion of the brain, a broken pelvis, fractures of three vertebrae and nine ribs. The fractured ribs punctured his lungs and caused hemorrhages. He was unconscious for

many days, and required hospitalization for a long period of time. In his workmen's compensation case growing out of the accident, he was adjudged to be totally and permanently disabled.

c. In the late 40's he had double pneumonia.

d. In 1950, he developed a serious cough and began to spit up blood. On June 3, 1950, at least one-half of his left lung was removed. On July 25, 1950, it became necessary to perform on him a rib resection and decortification so that pus would be drained from his thoracic cavity. The wound remained open and the cavity drained for many months. That surgery and illness required a lengthy hospitalization followed by a long convalescence.

4. The plaintiff was suffering from a serious emotional or mental disorder grave enough to cause substantial disability at the time of the first hearing. The decision of the Appeals Council, dated March 17, 1958, adopted by reference the decision of the referee on July 2, 1957, in which he found:

"The referee noted at the hearing that the claimant is a well-nourished individual, has a peculiar expression out of his eyes, and *clearly has emotional instability.*" (Emphasis added).

" * * * Since the claimant last met the earning's requirements for a period of disability in the quarter ending June 30, 1952, his present mental and nervous condition even though permanently and totally disabling may not be used as the basis for a finding of his disability under provisions of the Act since such conditions are not shown by medical evidence to have existed to a severely disabling degree prior to the time when the claimant last met the earnings requirements. * * * *"

After accepting the above facts, the Appeals Council reached the decision that the application for disability freeze should be denied because:

1. The "case must stand or fall on the mental and emotional problem."

2. The evidence did not show that such problem had its inception prior to the cut-off date of September 30, 1952.

3. It could not accept "evidence marshalled from lay sources regarding the claimant's behavior prior to September 30, 1952, for it does not constitute medical evidence."

4. The medical testimony had to be judged solely in the light of the doctors' objective findings; and when so judged, it fell short.

5. In making its finding that the plaintiff had not sustained his burden of proving disability covering the crucial period, "the Appeals Council accord weight to the fact that the claimant has had the equivalent of a high school education, and has had a varied working experience which included the exercise of supervisory responsibilities."

It is recognized that on review of an administrative determination, the Court is generally limited to consideration of the questions of whether the decision is the product of an error of law and whether it is supported by substantial evidence. Securities and Exchange Commission v. Chenery Corp., 1947, 332 U.S. 194, 67 S.Ct. 1575, 91 L.Ed. 1995. The error of law may include the improper application of proper legal standards or the application of improper legal standards. Frozen Food Express v. United States, D.C.Tex., 1963, 219 F. Supp. 131, by three-judge court. "Substantial evidence is more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Consolidated Edison Co. of New York v. National Labor Relations Board, 305 U. S. 197, 229, 59 S.Ct. 206, 217, 83 L.Ed. 126; Aaron v. Fleming, D.C.Ala., 1958, 168 F.Supp. 291, 294.

The decision in this case must be set aside because it is based upon errors of law, and it is not supported by substantial evidence.

The errors of law are the grounds outlined in paragraphs numbered 1, 3 and 4, just above.

■ The plaintiff's application did not have to "stand or fall on the mental and emotional problem." While the plaintiff did base his motion to remand on the ground that he had evidence to present in regard to his emotional and mental problems, there was nothing in the motion which could be construed as a request for the Secretary to isolate that phase of the evidence from the proof already in the record regarding his physical condition. The portion of the Court's order of remand already quoted shows that the Secretary was directed "to review his decision, all with respect to plaintiff's *mental and physical condition and impairment,* after hearing additional evidence." (Emphasis added). At the outset of the hearing following the remand, the Examiner made it clear that evidence received in the first proceeding would be considered as a part of the record in this one. The plaintiff was therefore entitled to have his condition judged in the light of the total effect of all his physical and mental impairments.

■ The Appeals Council committed an error of law in arbitrarily refusing to consider statements of lay witnesses regarding the plaintiff's mental condition solely on the ground that they did "not constitute medical evidence." The following was given by the Council as the support for that reason: "Under section 216(i) (1) of the Social Security Act, a physical or mental impairment must be *medically* determinable (italics supplied)." The section of the Act cited does not contemplate that lay testimony, coming within the sphere generally accepted by the courts, must be disregarded insofar as it relates to physical or mental symptoms and conditions. It means rather that the *type* of illness, impairment or disability involved, whether physical, mental, or both, must be one that is recognized and is capable of being determined medically. Hayes v. Celebrezze, supra; Page v. Celebrezze, supra. It is common knowledge that doctors and psychiatrists use information from laymen in arriving at their diagnosis. That is particularly true in mental cases.

■ The Appeals Council was not justified in limiting its consideration of the statements of the doctors, and particularly of the psychiatrist, to those phases supported by clinical and objective findings. Aaron v. Fleming, supra; Hayes v. Celebrezze, supra; Page v. Celebrezze, supra. In the Page case, Judge Brown said, 311 F.2d at p. 763:

"The statute does require that the disabling condition result from a 'medically determinable physical or mental impairment.' But it does not restrict medical investigation, examination and opinion to only those things described as 'objective clinical' or 'laboratory findings.'"

■ The application of the correct legal standards to the record in this case leaves no question about the fact the ravages of serious injury and disease have taken their toll, physically and mentally, on the human wreck here involved. While strong argument could be made that the required disability is established by either his physical or his mental infirmities, the total effect of both of them more than meets the legal standard set by the Fifth Circuit cases cited above.

The statements of the lay witnesses show that the plaintiff's mental condition had its inception prior to September 30, 1952. Dr. Grogan, his family physician who treated him from the time he was injured in the forty foot fall in 1930, said that his opinion was that the mental and emotional problems had existed continuously since long before the cut-off date, and that they had their origin in the serious head injuries sustained in the fall. Dr. Roan gave the opinion that the mental condition had existed since prior to September 30, 1952. Dr. McDaniel, the only psychiatrist in the case, said in his statement:

"Post traumatic convulsive seizures with post traumatic changes in disposition, vasomotor instability, intractable headaches, fatigability, and explosive

emotional outbursts, progressively worsening. Arthritis post traumatic."

"In my opinion Mr. Clifton is totally and permanently disabled to perform any type of work or pursue any type of gainful occupation because of having suffered a severe head injury with underlying brain damage as previously written in my report. It is further my opinion that Mr. Clifton's mental condition is of a long and continuous duration and existed prior to June 30, 1952, and therefore rendered him unable to be substantially gainfully employed."

The record in this case establishes that the plaintiff was suffering a physical and mental impairment prior to the cut-off date, that it continued without interruption until the hearings on his application, and that it would probably continue in the then foreseeable future. There is no substantial evidence to show otherwise. The question remaining is whether there is substantial evidence to support the finding that his impairment was not of such severity as to preclude him from engaging in substantial, gainful activity.

All of the evidence offered in the two hearings in the Department supported the plaintiff's claim of disability except the respective statements of Dr. Wiggins and possibly Dr. Johnson. However, when their statements are considered in the light of the standards set out in the Butler, Ferran, Hicks, Hayes, Page and Aaron cases, supra, they do not constitute substantial evidence to support a finding that the plaintiff was able to engage in substantial, gainful activity.

Dr. Johnson gave statements in 1955 and 1956. In his 1955 statement, he said that from a *physical* standpoint, the plaintiff *might* be able to do "some type of work." However, he gave a diagnosis of "anxiety state; chronic nervous exhaustion", and said that the plaintiff's emotional disorder would probably render him incapable of doing any work. His 1956 report was to the same effect in regard to the nervous trouble.

Dr. Wiggins was a physician appointed by the Department to examine the plaintiff prior to the first hearing. He was not a psychiatrist. He saw the plaintiff on one occasion in 1956 for a short examination. His brief report of slightly more than one page indicates that his examination was concerned almost entirely with the plaintiff's chest. He decided from the plaintiff's lack of co-operation in the breathing tests that he was malingering in that respect; but he still found rather extensive bronchiectasis" in the left chest and "a small amount on the right." He further stated that: "Obviously this indvidual does have some respiratory changes which produce some shortness of breath and which produce some cough and expectoration from time to time,". His report concluded with the statement: "I think this individual has something which he can get along with and do a moderate amount of work if he were willing to try. I do not think that he is totally and permanently disabled from all types of work."

Dr. Johnson's statement obviously does not furnish substantial evidence to support the findings of lack of the required disability when the plaintiff's physical and mental impairments are considered together, as they must be. Dr. Wiggins' opinion as to the plaintiff's ability to work cannot be taken as substantial evidence to support the Secretary's in view of the fact that it clearly appears that he took into account only the physical aspect of the plaintiff's trouble, and a very narrow phase of that, without giving any consideration at all to the nervous disorder that admittedly existed. Aside from that factor, the opinion of Dr. Wiggins that the plaintiff was not, "totally and permanently disabled from doing all types of work * * *" falls far short of saying that he could engage in substantial, gainful activity. There is nothing to indicate whether the doctor had in mind an occasional chore around the house, such as helping with the dishes, sweeping the floors or mowing the lawn. The Act contemplates more than

just the naked physical ability to do some work of some type on some occasions. A workman's condition must be such that he can get remunerative work to do, and that he can realize some compensation out of it.

That the Appeals Council adopted an impractical and unworkable standard under this record for judging the type of work the plaintiff could do in his condition is evidenced by the statement near the conclusion of its last decision that: " * * * In making its finding, the Appeals Council accords weight to the fact that the claimant has had the equivalent of a high school education, and has had varied working experience which included the exercise of supervisory responsibilities." What kind of work would a high school education before 1920 in a farm community at Tillacy, Alabama qualify a man to do? The most that good students learned from the best metropolitan high schools in those days was to read, write and recollect. The plaintiff's work record shows that his schooling added little or nothing to his earning ability. His adult life was spent in jumping from pillar to post in unskilled work, with only a relatively short time spent on each job except during World War II when he was working for defense plants during a manpower shortage. He did have a training course in sheet metal work and aircraft engines in Arlington, Texas during World War II. That led to the supervisory responsibilities mentioned in the statement quoted above. The jobs involving these responsibilities were chief of a crew which maintained and serviced planes at Hicks Field in 1942, and flight release inspector at Consolidated Aircraft Co. in Fort Worth. He has not been able to find use for his "varied working experience which included the exercise of supervisory responsibilities" since the manpower shortage problem was relieved soon after the end of World War II. Most of his time from then until 1950 was spent either as a salesman of fluorescent light globes and fixtures and as a real estate agent. Since his chest condition became serious in early 1950, he has worked for a very short time on two occasions as a delivery man. His total earnings since 1949 have been only $319.00.

What can a man in the plaintiff's condition do to earn a living? Who would hire him to do even unskilled labor? The only kind of work he has ever done other than manual labor required at least some judgment and level headedness. Who would deal with him as a salesman? Who would permit him to work in a job requiring the exercise of supervisory responsibilities? The answers to these questions are apparent, because the record clearly shows that the plaintiff is entitled to a disability freeze under the rule announced in the Fifth Circuit cases cited earlier in this opinion. The standards for disability to engage in substantial, gainful activity now well established in this Circuit are summarized in Hayes v. Celebrezze, supra, 311 F.2d at p. 654:

"The legal standards are now well outlined. For this sort of situation, they have been epitomized by the dual question (1) what can appellant do? and (2) what employment opportunities are available to a man who can only do what the Claimant can do? And in finding the answer 'mere theoretical ability to engage in substantial gainful activity is not enough if no reasonable opportunity for this is available.' Stringent as is the statutory standard of disability, it is to be administered with reason, Were it otherwise few would ever be able to qualify. This was pointed out by Judge Rives in a decision which we have many times approved. 'No matter how infirm, or disabled, or sick a man is, if he still possesses some of his faculties in some degree of mobility, he is not in the strictest sense unable to perform "any substantial gainful activity." ' For like reason once the Claimant makes a substantial showing, the burden resting generally on the Claimant to make out a claim is not to be carried to the logical extreme of forcing him to negative his capacity to do every possible job in the catalogue of the nation's industrial occupations."

The conclusion that the decision of the Secretary is not supported by substantial evidence could be strengthened, if necessary, by invoking the rule that would give the Court the right to pass on the weight and credibility of the documentary and written evidence. The only oral testimony came from the plaintiff, his wife and his brother. The Referee or the Examiner who heard that testimony was the exclusive trier of the credibility of those witnesses who testified in person before him. A different rule applies to documentary evidence and to testimony given through other means, such as records, stipulations, depositions, affidavits and written statements. The tribunal which received such evidence is in no better position to pass on its credibility and weight than the reviewing court, and the latter has the power to review such questions. United States v. Corporation of President of Church of Jesus Christ of Latter-Day Saints, 10 Cir., 1939, 101 F.2d 156; Grove Laboratories v. Brewer & Co., 1 Cir., 1939, 103 F.2d 175; British American Assurance Co. of Toronto, Canada v. Bower, 10 Cir., 1943, 134 F.2d 256; Bowles v. Carnegie, Illinois, Steel Corp., 7 Cir., 1945, 149 F.2d 545; General Cas. Co. of America v. Azteca Films, Inc., 9 Cir., 1960, 278 F.2d 161, cert. den. 364 U.S. 863, 81 S.Ct. 103, 5 L.Ed.2d 85. It is not necessary to decide here whether the substantial evidence rule would prevent the application of this principle where there is an actual conflict between different written statements. There is no such conflict here, and the Court has the power and authority to interpret the statements.

In applying the rule just stated, this Court accepts as credible the written statements of Doctors Grogan, Roan and McDaniel, and the statements of Doctor Johnson, with his opinion as to disability considered in light of both physical and mental or nervous impairment. The written statements of the lay witnesses would also be accepted. The inconsistencies and shortcomings pointed out by the defendant in connection with such testimony are not important in judging the credibility of the statements.

Regardless of whether the rule announced in the cases cited just above is invoked, the plaintiff is entitled to judgment establishing his period of disability as prayed for. In many cases of this kind, the matter would be remanded to the Secretary with directions to proceed in accordance with the opinion. However, this case has been before the Secretary twice, and nothing would be accomplished by sending it back. The record here brings the case so clearly within the rule in the Butler case and in the others following it that the Court will exercise the authority granted under 42 U.S.C.A. § 405(g), and render judgment here disposing of the matter.

This opinion will serve as findings of fact and conclusions of law under Rule 52(a), F.R.Civ.P.