Gordon R. THOMPSON

v.

Anthony J. CELEBREZZE, Secretary of Health, Education and Welfare.

Civ. A. No. 4–198.

United States District Court
N. D. Texas,
Fort Worth Division.

Feb. 9, 1965.

**874**

---

Charles Wheeler, Fort Worth, Tex., for plaintiff.

Stanley McMurry, Asst. U. S. Atty., Fort Worth, Tex., for defendant.

BREWSTER, District Judge.

This action is brought under 42 U.S.C.A. § 405(g) requesting the Court to review and set aside a decision of the Appeals Council of the Department of Health, Education and Welfare adverse to plaintiff's application to establish disability and for disability benefits under Sections 216(i) and 223(c) (2) of the Social Security Act, as amended.

The Hearing Examiner's decision, approved by the Appeals Council, recognized that the claimant was entitled to the relief requested if he discharged his burden of establishing that he was under "a disability as defined in the Act beginning on or before April 1, 1962, for entitlement to disability insurance benefits, and on or before April 23, 1962, for establishment of period of disability."

The Examiner found that the claimant had not established "disability", as that term is defined in the pertinent sections of the Social Security Act, at any time for which his application was effective. The Court is of the opinion that such finding should be set aside for the reasons hereinafter given.

A detailed discussion of the evidence is unnecessary, as the fault here lay in failure to apply correctly the legal standards set out in Hayes v. Celebrezze, 5 Cir., 311 F.2d 648, 654 (1963); Butler v. Flemming, 5 Cir., 288 F.2d 591 (1961), Ferran v. Flemming, 5 Cir., 293 F.2d 568 (1961), Hicks v. Flemming, 5 Cir., 302 F.2d 470, Page v. Celebrezze, 5 Cir., 311 F.2d 757 (1963), Aaron v. Fleming, D.C.Ala., 168 F.Supp. 291, 295 (1958) by three-judge court, and Clifton v. Celebrezze, D.C.Tex., 228 F.Supp. 251, 258 (1964). The Examiner denied the application on the basis of a mere theoretical ability to engage in substantial gainful activity when no reasonable opportunity therefor was available to this claimant.

No question of time element is involved. The special earnings requirement during the effective period of the application were met, and such requirements will continue to be met through September 30, 1966. The only question is whether the condition of the claimant as found by the Examiner was such as to come within the purview of disability as contemplated by the sections of the Act here involved.

All of the facts and quotations that follow are taken from the Examiner's Decision, unless otherwise indicated.

The plaintiff was a fifty-eight year old man with ten grades of formal schooling. He had worked as a meat smoker for a packing company, as a mechanic for the fire department, and as a machine repairman for a large aircraft corporation. The Examiner found that in claimant's employment as a machine repairman the last thirteen years before he terminated work, "he was engaged in the repair, correction or adjustment of all types of mechanical devices and machines which were used in the manufacture and assembling of parts incidental to the construction of aircraft. He worked mostly indoors eight hours per day, five days per week, and his position required not only great mechanical knowledge, *but also dexterity in the use of his hands and his physical strength in assuming all possible positions.*" (Emphasis added)

The claimant was suffering from pulmonary emphysema and pulmonary fibrosis to the extent that he quit the job he had held for thirteen years as a machine repairman, and he and his wife had removed themselves from all social activities. His pulmonary condition had resulted in acute shortness of breath, severe coughing spells and excessive ex-

pectoration of large amounts of sputum. His physical residual was grossly limited, "due to its resultant cause of shortness of breath associated with gasping and coughing." "Any atmosphere associated with excessive dust, paint or smoke produces an attack of greater proportions, and he has been advised to avoid such surroundings."

The Examiner relied chiefly upon the written reports of Dr. Wiggins. The following statement from the Examiner's Decision contains some pertinent quotations from those reports:

"* * * I think this individual has a chronic bronchitis associated with and secondary to a moderate amount of pulmonary emphysema. I suspect any heavy exertion, or even moderate exertion, will produce dyspnea. * * * His disease is not so severe but what it should permit him to do anything which entails moderate exertion. I am unable to find any evidence of a significant disease process elsewhere. As late as December 14, 1962, he states: One would think this individual would be able to carry on a useful occupation *provided it did not entail much physical exertion,* * * * Most individuals like this, *who are working in an atmosphere fairly free of respiratory irritants* can carry on a useful occupation, *provided the work is not too strenuous* and provided that they sincerely attempt to help themselves *by* stopping smoking, using bronchodilators, antibiotics on occasions and certain other measures which sometimes may be of value." (Emphasis added)

All of the doctors' reports recognized that the claimant was required to have medication to give relief from dyspnea, which is the medical term for difficult or labored breathing. Dr. Wiggins mentioned his need for bronchodilators, if he tried to work, and the other doctors said he should have an oxygen cylinder available at all times.

The Examiner recognized that payment of private disability insurance ben-efits was not determinative of the question of disability under the Social Security Act; but, in giving the claimant's history, his Decision recited:

"* * * On February 22, 1962, the claimant's employer, General Dynamics, made a claim on behalf of claimant based upon the medical reports of the claimant's physician and those of the company's medical staff.

"As of March 8, 1962, the claimant was referred to an independent medical authority by both the company and its insurer, and upon receipt of his report, the insurance carrier honored the company's claim and he was placed upon the disability retirement list effective with September 15, 1961. A cash settlement of $13,000 was made to him, and a compensation of $60.00 per month was established * * * *"

The Examiner concluded that the claimant's condition, as found by him, did not establish "disability" under the Social Security Act based upon (a) data contained in the Dictionary of Occupational Titles, published by the Department of Labor, Bureau of Employment Security, (b) The Worker Trait Requirements for 4,000 Jobs, also published by the Department of Labor, (c) the United States Census of Population 1960, published by the Department of Commerce, and (d) the "common knowledge that the Fort Worth-Dallas area is an area of industrial concentration and a skilled mechanic is in demand in industry wherein trained personnel can be utilized in light or sedentary work."

The shortcoming in the Examiner's conclusion is that he took arbitrary classifications that might be fitted to a person having an average pulmonary emphysema and fibrosis and arrived at a theoretical ability to work, and ignored the special disabling effects of the disease suffered by the claimant which in reasonable probability rendered him incapable of getting an opportunity to work. The claimant's disability here cannot be determined upon any such

slide rule basis. The procedure applied by the Examiner to the facts in this case violated the rule that ability to engage in substantial and gainful activity "is not to be measured by the hypothetical average man, but by the particular claimant's capabilities." Celebrezze v. Warren, 10 Cir., 1964, 339 F.2d 833, 837.

In Hayes v. Celebrezze, 311 F.2d 648, 654 (1963), the Court of Appeals for the Fifth Circuit laid down the following test for determining disability:

"The legal standards are not well outlined. For this sort of situation, they have been epitomized by the dual question (1) what can appellant do? and (2) what employment opportunities are available to a man who can only do what the Claimant can do? And in finding the answer 'mere theoretical ability to engage in substantial gainful activity is not enough if no reasonable opportunity for this is available.' Stringent as is the statutory standard of disability, it is to be administered with reason. Were it otherwise few would ever be able to qualify * * "

■ There is often a pitfall, as there was in this case, in swallowing whole the statement of a doctor that a claimant is able to do some work and concluding from it that there is no disability, since doctors seldom take into consideration the employment opportunities available to a man in a claimant's condition. As was said in Clifton v. Celebrezze, D. C.Tex., 228 F.Supp. 251, 257, " * * * The Act contemplates more than just the naked physical ability to do some work of some type on some occasions. A workman's condition must be such that he can get remunerative work to do, and that he can realize some compensation out of it." See also Celebrezze v. Warren, 339 F.2d 833, 837.

The claimant's condition differed from a physical handicap, consistent and predictable in nature, that would enable a person to do a job with safety to himself and others, even though perhaps such person's ability to get around or to put out work might be subject to some limitations. His disability was of such a nature that any physical exertion or exposure to "respiratory irritants" could trigger a severe spell of dyspnea. What employer would hire a man who is required to have an oxygen tank or a bronchodilator and a spittoon available at all times? Where could he find the type of work, such as machine cleaner, outside foreman in a mechanical machinery yard, etc., the Examiner concluded he could do, and yet have "atmosphere fairly free of respiratory irritants", as even Dr. Wiggins said he required?

The Examiner took judicial knowledge that a skilled mechanic was in demand in the Fort Worth-Dallas area "wherein trained personnel can be utilized in light or sedentary work." He failed to take into consideration other pertinent factors of just as common knowledge. On account of the Workmen's Compensation Law of Texas, almost all employers in the entire State of Texas with more than three employees carry workmen's compensation insurance. The compensation carriers require the employers to limit employment to persons who can pass a medical examination by the insurance company doctor. The type of work the Examiner found the claimant could do would hardly be available in a place employing less than three persons. The result is that a man cannot get a job involving that kind of work unless he can pass the required medical examination. What doctor would pass a man in the claimant's condition?

■ The claimant *might* be able to do light work for short periods in a place free from dust and other pulmonary irritants, if there were such a place for his type of work, and if he were permitted to work with an oxygen tank on one side and a spittoon on the other. However, his condition is so unpredictable and could be so dangerous to himself and others that no reasonable opportunity for employment is available to him. Hayes v. Celebrezze, supra. Under such circumstances, the claimant met his burden and his application should have been granted.

Due recognition has been given the rule that a court should uphold the decision of an administrative agency supported by substantial evidence and based upon correct application of the proper legal standards.

Judgment will be rendered (1) setting aside the decision of the Appeals Council, (2) declaring that the plaintiff is entitled to the allowance of his claim, and (3) remanding this case to the Department of Health, Education and Welfare for further proceedings in accordance with this opinion and the judgment.

This opinion will serve as findings of fact and conclusions of law under Rule 52(a), F.R.Civ.P.