**Thelma C. WHITTED, Plaintiff,**

**v.**

**Robert E. HAMPTON, James E. Johnson and L. J. Andolsek, as United States Civil Service Commissioners, Defendants.**

**No. 70 Civ. 3101.**

United States District Court,
S. D. New York.

Dec. 2, 1970.

Avstreih, Martino & Weiss, Mount Vernon, for plaintiff by David Avstreih, Mount Vernon, of counsel.

Whitney North Seymour, Jr., U. S. Atty., S. D. N. Y., for defendants by Joel B. Harris, New York City, of counsel.

## OPINION

POLLACK, District Judge.

The defendants, sued herein as United States Civil Service Commissioners, move to dismiss the complaint pursuant to Rule 12(b) (6), Fed.Rules Civ.P., for legal insufficiency of the claim. The plaintiff has made a cross motion for summary judgment pursuant to Rule 56.

The plaintiff seeks by this action to require the Civil Service Commission to certify that her husband's estate is entitled to be paid $10,000 as the beneficiary of Optional Life Insurance made available by Congress for federal employees in 1967, effective February 14, 1968. Her husband, a federal postal clerk, died on April 15, 1968. Unlike the regular life insurance which federal employees automatically receive by paying two-thirds of the premium, 5 U.S.C. §§ 8702, 8708, the Optional Life Insurance must be elected by the employee and the full premium paid by its deduction from the employee's compensation, 5 U.S.C. § 8714a.

The legislative enactment undertook to protect the right of election for a transitional period of 60 days following the effective date of the law, which, as stated, was February 14, 1968. The statute provided that anyone dying after the effective date, who had not elected Optional Life Insurance should be deemed to have so elected, provided that the Commission should find that he did not have a "reasonable opportunity" to assert his election before his death.

The statute says:

The amendments made by section 404 of this Act [the right to optional insurance] shall take effect on the first day of the first pay period which begins on or after the one hundred and eightieth day following the date of enactment [December 16, 1967], or on any earlier date that the Civil Service Commission may prescribe [February 14, 1968], which is at least sixty days after the date of enactment [December 16, 1967]. In the case of an employee who died during the period beginning on the date of enactment [December 16, 1967] and ending on the effective date prescribed by or pursuant to this subsection, or during the sixty days immediately following such period [until April 14, 1968] if the Commission determines that he did not have a reasonable opportunity to elect the optional insurance made available by section 404, the insurance of such employee shall be determined as if the amendments made by section 404 had been in effect on the date of such death, and the employee had elected to receive the maximum amount of optional insurance available to him under such amendments. * * * Postal Revenue and Federal Salary Act of 1967, Pub.L. No. 90–206, § 405(b) (1), 81 Stat. 648.

The plaintiff's husband neither asserted his election nor did he die within the 60 day period; he died one day thereafter, on April 15, 1968. However, the plaintiff claims that the decedent died before the expiration of the statutory "reasonable opportunity" to assert an election. Consequently, plaintiff contends that in accordance with the statute, her husband should be deemed to

have timely made the assertion to obtain the Optional Life Insurance policy offered by the government.

The undisputed facts are that the Commission mailed an election form, Standard Form 176–T to the decedent on March 1, 1968, informing him of his opportunity to acquire the Optional Life Insurance coverage. Three days later, the decedent suffered a massive brain hemorrhage and complete loss of consciousness which persisted until his death 42 days later from pulmonary embolus.

Sympathetic to the case, the Commission nevertheless believed that the law prevented the recovery sought on the ground that the death of the employee had occurred one day after the 60 day period had expired. For that reason, the Commission did not reach or consider whether the decedent had had a "reasonable opportunity" timely to assert his election. The decision of the Commission was as follows:

> SF–176–T was sent to him in ample time to have been completed before April 14, 1968. It was unfortunate that the appellant became ill and died the day after the date provided for in the law discussed herein, but the Commission is not authorized to make an exception because of these circumstances.

As a guide for the administration of the "reasonable opportunity" to make an election, the Commission promulgated the following rule:

> An employee who did not elect and who dies before he had had the SF 176–T for at least seven days will be presumed to have died before he had a reasonable opportunity to elect. After the seven days, an employee will be presumed to have had a reasonable opportunity to elect. This presumption may be overcome by evidence that he did not submit his election because of a cogent reason such as (1) he died while on extensive travel, (2) he was too mentally or physically ill to elect the optional insurance, or (3) the serious illness or death of a family member or relative caused him to be away from work. There may be other valid reasons for delay. * * * Federal Personnel Manual System, Federal Employees Group Life Insurance: Interim Rules and Procedures Governing Optional Insurance, January 26, 1968, at 9.

█ Under the Civil Service Regulations, plaintiff has exhausted her right of administrative appeal within the Commission and the decision of the Board of Appeals and Review is now final. The facts in the instant case are not in dispute. This Court's function now is to consider whether the Agency applied the correct law, 5 U.S.C. § 706(2) (A); Clifton v. Celebrezze, 228 F.Supp. 251 (N.D.Tex.1964) and whether there is a substantial factual basis for the administrative decision. 5 U.S.C. § 706(2) (E); Consolidated Edison Co. of New York v. N. L. R. B., 305 U.S. 197, 229, 59 S.Ct. 206, 83 L.Ed. 126 (1938). A statutory interpretation, is, of course, fully reviewable by the Court. Celebrezze v. Wifstad, 314 F.2d 208 (8th Cir. 1963). However, "the function of the reviewing court ends when an error of law is laid bare. At that point the matter once more goes to the Commission for reconsideration." McBride v. Smith, 405 F.2d 1057, 1059 (2d Cir. 1968), quoting FPC v. Idaho Power Co., 344 U.S. 17, 20, 73 S.Ct. 85, 97 L.Ed. 15 (1952).

█ It appears to the Court that the Commission has erroneously failed to consider and therefore has not vindicated the congressional purpose to afford a "reasonable opportunity" within which to make the required election. Moreover, the Commission has erroneously applied a federal period of limitations against a claim based on a federally created right as if the lapse of the limitary period (60 days) inexorably bars the claim. This treatment of a federal limitary period is inconsistent with the doctrines of federal equity and was an erroneous conception of the law.

■ The apparent congressional intent as well as federal principles of equity leave the Civil Service Commission free to determine as a question of fact whether the decedent had a "reasonable opportunity" to assert his election. Such a consideration is unhampered by the lapse of 60 days from the effectiveness of the statute. If a "reasonable opportunity" did not expire within the 60 day period, the time limit would be equitably extended and last until such an opportunity was afforded; otherwise, congressional intent would not be vindicated but would be thwarted.

Congress specifically addressed itself to some, but not all, situations which might arise after the statute providing for Optional Life Insurance was enacted. The statute anticipated the possibility that an employee might die during the period between the date of enactment and the effective date of the Optional Life Insurance program; and if he did he was to be automatically awarded the additional insurance. The statute anticipated that an employee might die during the 60 days following the effective date of the program. Such a person would be covered by the insurance if he had elected coverage or if the Commission found that he had not had a "reasonable opportunity to elect" coverage. The statute does not expressly provide for the person who dies more than 60 days after the effective date of the program, not having elected insurance and not having had a reasonable opportunity to elect that insurance. Called upon to deal with such a situation in this case, the Commission found that the key factor was the date when the employee had died. However, it would seem that under the statute, if an employee has not had a "reasonable opportunity" to elect insurance, it was intended that he be covered even if he died after the expiration of the transitional period.

The Senate Report on the statute says:
* * * insured employees who resign, retire, or die between the date of enactment and effective date are *protected* with respect to the addition-al * * * insurance, without payment of additional premiums. Senate Report (Post Office and Civil Service Committee) No. 801, Nov. 21, 1967 U.S.Code Cong. and Admin.News (1967) at 2300. (Emphasis added).

The Senate Report manifests a legislative intent to *protect* Civil Service employees. Providing coverage to employees who did not have a reasonable opportunity to elect coverage is consistent with such a legislative intent; mechanically denying coverage to an employee who died after termination of the transitional period but regardless of whether he had an opportunity to elect coverage during that period is *not* consistent with such intent.

■ Federal principles of equity in considering the period limiting the assertion of an election require an examination into whether the decedent had a "reasonable opportunity" to elect the Optional Life Insurance.

■ It is well settled doctrine that a federal tribunal, when applying federal limitary periods on the assertion of a claim created by federal statute, may suspend the running of the limitary period and determine when it begins to operate. This equitable doctrine is read into every federal statute of limitations. Where special circumstances exist giving rise to equities, the statute may be disregarded or it may be adopted subject to equitable doctrines designed to mitigate against the strict application of the time limit. Holmberg v. Armbrecht, 327 U.S. 392, 396, 66 S.Ct. 582, 90 L.Ed. 743 (1946); Bailey v. Glover, 21 Wall. 342, 347, 22 L.Ed. 636 (1875); Larios v. Victory Carriers, Inc., 316 F.2d 63, 66 (2d Cir. 1963). See also, Urie v. Thompson, 337 U.S. 163, 168–170, 69 S.Ct. 1018, 93 L.Ed. 1282 (1948); Atlantic City Electric Co. v. General Electric Co., 312 F.2d 236, 239 (2d Cir. 1962).

■ Any inconsistency between the provision for a "reasonable opportunity" to make the required election and the lapse of 60 days from the date of effectiveness of the statute should be re-

solved equitably in favor of the beneficent congressional purpose.

The defendant's motion for a dismissal of the complaint is denied and the plaintiff's motion for summary judgment is granted to the extent that the claim of plaintiff is remanded to the Commission for a redetermination in accordance with the applicable principle of law set forth herein.

So ordered.